*244 McCALEB,- Justice.
This is a suit for damages arising out of a motor vehicle accident.
On September 11, 1960 at about 10:00 a. m., plaintiff, Mrs. Aline Gaspard, was a passenger in a Chevrolet automobile owned by her husband, Deussard Gaspard, which was being driven by her son, Wilman Gaspard, a 15-year-old minor, in a northerly direction in Vermilion Parish on Louisiana Highway 35, a black topped two-way road. The other passengers in the car were plaintiff’s sister-in-law, Mrs. Eudon Gaspard, who was seated on the front seat with plaintiff and her son, and two of plaintiff’s grandchildren who were occupying the rear seat. This group had been to church at Forked Island and were returning one of the grandchildren to the home of plaintiff’s daughter which was north of Forked Island and on the west side of the road. There was a drizzling rain and plaintiff’s son had been driving the car at a speed of approximately 45 miles per hour until he reached a point about 178 feet from the place in the road at which he intended to make a left turn into the premises of his sister. At this point (178 feet away), he retarded the speed of the car considerably by braking it and gave notice, by electric rear light signals, of his intention to make a left turn. At that time, a Lincoln automobile being driven by Bradley C. LeMaire, also travelling north at a 'speed of 55 miles per hour, was approaching the Gaspard car from the rear and, just as the driver of the Gaspard car was executing the left turn in and over the passing lane, the LeMaire car,, which had almost overtaken it and was. attempting to pass it, collided in said passing lane with the left side of the Gaspard[1] car.
Plaintiff, having sustained personal injuries as a consequence of the accident,, seeks recovery of damages from LeMaire- and his insurance carrier, United States. Casualty Company, and also North River Insurance Company, the insurer of her husband’s car, alleging that the mishap' resulted from the combined negligence of LeMaire and her son, in that each failed to keep a proper lookout and have his vehicle under control.
The case was tried by a jury which returned an in solido verdict against all defendants for $19,500.[1] The court thereafter, finding that defendant North River Insurance Company’s liability for bodily injuries was limited to $10,000 per person under the terms of its policy and that United States Casualty Company’s limit of liability for bodily injuries under its policy was $5,000 per person, entered judgment on the verdict against all defendants in solido *246 and correctly restricted the amount of •solidary liability of North River Insurance •Company to $10,000 and that of United .States Casualty Company to $5,000. This judgment was appealed by all defendants :to the Court of Appeal, Third Circuit. 'That court, while apparently approving the finding of the jury that both LeMaire and plaintiff’s son were guilty of concurrent negligence having causal connection with the accident, concluded that plaintiff was, nevertheless, not entitled to recover from LeMaire and his insurer because the contributory negligence of plaintiff’s son was to be imputed to plaintiff. Accordingly, the judgment of the district court was reversed as to these defendants and affirmed only insofar as it held North River Insurance Company for $10,000 conformably with the limit of liability expressed in its policy. See Gaspard v. LeMaire, La.App., 146 So.2d 467.
Plaintiff and North River Insurance Company then applied here for certiorari. Both •applications were granted.
In this Court, whereas plaintiff is seeking merely a reinstatement of the judgment of the trial court, the two insurance companies and LeMaire have reurged all of the factual and legal contentions made in the •courts below. North River Insurance Company contends, initially, that the courts below erred in holding that Wilman Gaspard •was guilty of negligence in any respect and that the accident was caused solely through the fault of LeMaire.
On the other hand, LeMaire and United States Casualty Company argue that the sole cause of the accident was the negligence of Wilman Gaspard in making a sudden left turn across the path of the oncoming LeMaire vehicle which was overtaking the Gaspard car at the time the left turn was attempted.
After a careful examination of the evidence, we have no hesitancy in concluding that neither one of these contentions has any m'erit. The testimony of LeMaire exhibits that he did not exercise a proper lookout. He was returning the Lincoln automobile to Kaplan, where he had borrowed it from a relative following a Saturday night of carousing and admittedly was suffering from the effects of his intemperance. Pie did not even see the signal lights of the Gaspard vehicle giving notice of the driver’s intention to execute a left turn and, when he was but 90 feet from the rear of that car, he swerved over into the passing lane without slackening his 55 mile per hour speed in an attempt to overtake it when he should have been aware that a left turn was to be executed.
While young Gaspard’s evidence exhibits that his overall operation of his father’s car was prudent, we nevertheless conclude that he was contributorily negligent for he faltered in his duty of lookout .in one im *248 portant respect. We have no doubt he had been driving carefully, that he slowed down and, observing the LeMaire car several hundred feet to the rear, gave a proper signal for a left turn at a time when, and under circumstances from which, a normal person would have concluded that it would have been safe to execute the maneuver. But, according to his candid admission, young Gaspard failed, after making preparation for the left turn, to look a second time before attempting to execute it. If he had done so, he would have immediately become apprised of the fact that the LeMaire car was in the process of rapidly overtaking him; that it had moved over to the passing lane and that a left hand turn at that moment would unquestionably cause an accident. His failure to look the second time was a dereliction which had causal connection with the accident.
Disposal of the factual issue as to the concurring negligence of the participants in the collision brings us, then, to the more important question of law which prompted this Court to grant writs of review herein— that is, whether the negligence of Wilman Gaspard is imputable to his mother as a bar to her right of recovery from LeMaire and his insurer.
The Court of Appeal, in holding in the affirmative, based its decision on two theories. First it deduced that, under the prior jurisprudence of the Courts of Appeal, plaintiff must be charged with having at least “the theoretical right of control” over her son’s operation of the car as the mission on which they were engaged was. one for the mutual benefit of plaintiff, the driver and the other members of the family who had attended church and that, under these circumstances, the contributory negligence of the driver is imputed to plaintiff and bars her recovery.
Moreover, the court found that imputation of the son’s negligence was proper in view of Article 217 of the Civil Code which provides that, as long as the child remains under the authority of his parents, he is bound to obey them “ * * * in everything which is not contrary to good morals and the laws”. From this codal article the court concluded that plaintiff had the right to control her son’s driving and that she had even verified this right by testifying that, while she was in the car, she had control over her son’s actions.
We do not believe that the conclusions of the Court of Appeal on this phase of the case are well founded. Imprimis, we hasten to observe that albeit Mrs. Gaspard did state under cross-examination that she believed that her son would have obeyed her if she had told him what to do or where to go and that she was “ * * * the boss of the car * * * ” while riding in it, these answers to suggestive questions may not properly be interpreted as meaning that *250 she supervised or attempted to assume control of the mechanical operation of the car. We think it is more accurate to say that plaintiff intended to convey that her son was obedient and that he would comply with her desires as to the route to be taken and the places to go.
Article 217 of the Civil Code, which deals with parental authority, states the general duty of every child to obey his father and mother. It does not supply the answer to the question posed here which pertains essentially to the barring of a right of recovery of one free from personal negligence by imputing to such person the contributory negligence of another person because of their legal relationship. Under the topic “Negligence”, Section 234 of 38 Am.Jur. states:
“The term 'imputed negligence’ refers to the rule which visits upon one person responsibility for the negligence of another.” The text continues, in Section 235, thus:
“As a general rule, it may be said that in order to impute the negligence of one person to another, there must exist between them some relation of master or superior and servant or subordinate or other relation akin thereto. The relation between them must be one invoking the principles of agency, or the persons must be co-operating in a common or joint enterprise, or the relation between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person actually negligent. As the rule is stated by American Law Institute,[2] the relation between the plaintiff and the third person must be such as to make the plaintiff responsible at common law for the negligent conduct of such third person.” (Emphasis ours).
We are in accord with the views; expressed by the American Law Institute Restatement and we hold that unless a. plaintiff could be held responsible, as a matter of law, for the torts of the person-whose negligence is sought to be charged to him the doctrine of imputed negligence cannot be applied. In Louisiana, where the common law does not obtain, a mother is not responsible for the damages occasioned by the negligence of her minor children residing at home while the father is-alive. Under Article 2318 of the Civil Code that responsibility attaches only to the father.[3]
*252 According to the evidence in the •case at bar, Mr. Gaspard had given his son permission to drive the Chevrolet automobile. Hence, whether Wilman Gaspard was acting for himself or as agent of his father on a community mission, the father alone, apart from the contractual liability •of North River Insurance Company, was responsible for his negligence in the operation of the automobile. If Mr. Gaspard himself had been driving and, through his negligence and that of a third person plaintiff had sustained injuries, his negligence would not have been imputable to her in her action against the other negligent third person. Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 59 A.L.R. 148; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292 and other cases. Therefore, by a parity of reasoning, there is no basis for a conclusion that the negligence of the driver, assuming that he was acting as agent for plaintiff’s husband, should be imputed as a matter of law to plaintiff just because he happened to be plaintiff’s son.
Nor can we agree with the theory of the Court of Appeal that the negligence of the son must be imputed to the mother because the mother was vested with the theoretical right of control of the son’s operation of the car. On the contrary, the negligence of one person cannot be imputed to another person not guilty of personal negligence in the absence of a legal obligation on the part of the latter to respond for the fault of the former. This principle is well stated by the California Court of Appeal in Roberts v. Craig, 124 Cal.App.2d 202, 268 P.2d 500, 43 A.L.R.2d 1146, as follows:
“ * * * The fundamental rule is that one person, himself free from fault, shall not be required to bear the consequences of the actions of another. Vicarious liability is the exception. It is only where a person actually acts through another to accomplish his own ends that the law will or should impose such vicarious liability. Right of control over the other person is a test of the required relationship, but it is not itself the justification for imposing liability. * * * ”
The views expressed by the Court of Appeal, Third Circuit, in this case emanate from several court of appeal decisions which have never been specifically approved by this Court although certiorari has been denied in three of them.[4]
Those cases have generally involved suits by owners of automobiles who had received injuries in collisions attributable to the joint negligence of persons driving the owners’ cars when the owners were pas *254 sengers therein and the negligence of drivers of other cars with which the owners’ cars collided. In those matters (see, for example, Rodriguez v. State Farm Mutual Insurance Co. (La.App.) 38 So.2d 432 and Service Fire Insurance Company v. Johnson & Bell (La.App.) 138 So.2d 410), the appellate courts have held that the negligence of the driver.of the owner’s car is imputable to the owner and bars his recovery against a negligent third party as a matter of law because the owner has the “theoretical right of control” over the driver of his car, when the ride is for the owner’s benefit or for the mutual benefit of himself and the driver.
We cannot subscribe to these holdings if they are intended, as seems to be the case, to impose a bar to recovery by the owner-passenger (or even a borrower-passenger, see Monroe v. Heard (La.App.) 168 So. 519) against a negligent third person by imputing to him the negligence of the driver of his car solely on the ground that he had a theoretical right of control over such driver. It is unrealistic to hold, in the present day uses of motor vehicles when heavy traffic is the rule and not the exception, that the occupant of a motor vehicle has factually any control or right of control over the driving of the operator. Therefore, in the absence of a relationship of principal and agent or other legal relationship for which responsibility is imposed on one of the parties for the fault of the other or of independent contributory negligence of the passenger, or a showing that the parties were engaged in a joint adventure, no cogent reason exists for denying to the injured passenger recovery against a third person who has been guilty of negligence having causal connection with the accident.
Most of the cases relied on by the Court of Appeal for its decision (and we do not think it is essential to cite them all or attempt to point out the different factual features which may distinguish some of them from the case at bar) are contrary to the rationale of White v. State Farm Mut. Auto Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338, wherein we resolved that a guest or passenger in an automobile has the right to place reliance upon the driver and is not required to monitor the operation or pay strict attention to the road, save under special circumstances or conditions from which it would be reasonable to conclude that common prudence dictated preventive measures by said passenger or guest.
Since we are of the opinion that all defendants are liable in solido for plaintiff’s injuries, the only matter left for determination is the quantum of damages.
Plaintiff sued for $60,000, alleging that she had suffered general contusions and bruises extending over her entire body and *256 severe and permanent injuries to her back consisting of a compression fracture of the first lumbar vertebrae, which injury produced a fibrotic condition and aggravated an osteoporosis of the lumbar and dorsal area. As aforesaid, plaintiff was awarded $19,500 by the jury and, in the Court of Appeal, defendants strenuously contended that the judgment was highly excessive and in unjustifiable variance with the quantum of damages given in other Court of Appeal decisions involving similar injuries.
The Court of Appeal concluded that the award of the jury was not manifestly excessive. In this Court, the defendants re-urge their contention citing several Court of Appeal cases wherein considerably smaller judgments have been granted.
The record shows that, following the accident, Plaintiff was taken to the Kaplan Hospital where she was confined to bed for three and one-half weeks under treatment of Drs. Abshire and Sudduth. After three weeks, a brace was put on her back and within a few days thereafter plaintiff was able to go home. She testified that she stayed in bed at home for one or two weeks; that she was still wearing the brace whenever it was needed; that sedatives were prescribed for her pain and that, at the time of the trial (approximately one year after the accident), she was taking sedatives. Plaintiff further stated that she could do her housework only when standing up for,- when she stooped down to do work, she experienced pain in her back and that she was having difficulty sleeping at night.
Drs. Abshire and Sudduth testified, in substance, that plaintiff had sustained a 25-30% compression fracture of the first lumbar vertebrae as a result of the accident. This diagnosis was confirmed by Dr. Dunning, an orthopedic surgeon who examined plaintiff about four months later. He also noted that plaintiff (a woman 55 years of age) had generalized osteoporosis (decalcification of the bones), a condition which existed prior to the accident.
Drs. Sudduth, Abshire and Dunning also stated that fibrosis had resulted within the area of the fracture. This condition, which is described as a loss of resiliency in the muscle surrounding the fracture, is said to be permanent and the doctors believe that it is likely to be the cause of the pain of which plaintiff was complaining. Dr. Dunning indicates that the fibrosis which he found present was due to the wearing of the brace but he felt that, if plaintiff would have taken exercises he recommended, she would be relieved of her pain within a few months.
About 11 months after the accident, on October 10, 1961, plaintiff was examined by Dr. Morin, an orthopedic surgeon, who testified for'defendants'. This physician compared' the' X-Rays that were taken' imme *258 diately after the accident with those taken by him and reached the conclusion that the compression fracture resulted from the osteoporosis and not from the accident. However, we accord greater weight to the evidence of plaintiff’s doctors and conclude that the compression fracture resulted from the accident and, even if it did not, it is fair to say that the osteoporosis condition was aggravated by the traumatic injury suffered in the accident.
There have been several cases of the Courts of Appeal involving the quantum allowable for back injuries similar to those suffered by plaintiff and the highest award we have been able to find for such injuries is one of $7500, which was approved by the First Circuit Court of Appeal in Merchant v. Montgomery Ward & Company, 83 So.2d 920 (1955). In that case, a 53 year old woman sustained a compression fracture of the eighth thoracic vertebrae and possible rupture of the fifth lumbar intervertebral disc. As a result, she suffered severe pain reaching from her lower back across her hip, was required to sleep on a hard board and could not lean over or reach to any great extent and for the alleviation of which condition an operation of a major nature had been recommended.
In Bouwell v. Marquette Casualty Company, 125 So.2d 168 (1960), the Court of Appeal, Fourth Circuit, approved a $4500 award to a man who sustained a fracture of the first vertebrae of the lumbar segment of the spine, was required to wear a brace, was confined to his bed for two weeks and was unable to return to work until approximately six months after the accident.
In Hargett v. Chemical Service, Inc., 116 So.2d 855 (1959) the Court of Appeal, First Circuit, awarded a man $4150 for multiple and extensive lacerations of the ears necessitating repair by plastic surgery, and also a compression fracture of the 11th thoracic vertebrae of the spine, resulting in disability for approximately 29 weeks during most of which time plaintiff was forced to wear a heavy and uncomfortable brace.
. In Alvares v. Rush, 108 So.2d 797 (1959), the Court of Appeal, Second Circuit, awarded a railroad laborer $5,000 (plus stipulated amounts for loss of wages and hospital and medical care) for pain and suffering for injuries received in an accident consisting of 12 fractured ribs, a punctured lung, fracture of four lumbar vertebrae and fracture of the mandible in two places, who was hospitalized several times and contracted pneumonia and who could not work without use of a belt to support his body.
And in Fulco v. Lumbermen’s Mutual Casualty Company, 110 So.2d 871 (1959), the Court of Appeal, Second Circuit, citing many authorities, awarded a 50 year old housewife $4,000 when she sustained a *260 compression fracture of the first lumbar Vertebrae' and was also suffering from osteoporosis. It was shown in this case that, as a result of her injuries, plaintiff had suffered a residual disability 'of from five to fifteen percent.
It is seen from the. foregoing that the award of $19,500 in this.,case is far out of line with those -given to the plaintiffs in the cited cases for similar injuries.[5] We, of course, realize that in fixing quantum of damages each case must necessarily depend upon its own particular facts. However, as pointed out by the Court of Appeal in Fulco v. Lumbermen’s Mutual Casualty Company, supra, it is well recognized that a degree of uniformity of awards in court decisions “should be maintained so far as possible.”
Considering that the awards in the cited .cases for injuries of a similar nature have ranged between $4,000 and $7,500, we feel that a judgment in plaintiff’s favor for the sum of $8,500 for the injuries she has sustained will 'fully compensate her for the consequences of the accident.
- For the reasons assigned, the judgment of the Court of Appeal is reversed insofar .as it rejected plaintiff’s claim against Bradley C. LeMaire and his insurer, United States Casualty Company, and it is now ordered that the judgment of the district 'court be and it is amended so as to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in, the full sum of $8500.00, together with legal interest thereon from date of judicial demand until paid; that defendants, Bradley C. LeMaire and North River Insurance Company are condemned, individually and in solido, to pay unto plaintiff the full amount of this judgment; that United States Casualty Company is also condemned in solido with the other two defendants, but only to the extent of $5,000, together with interest at the rate of 5% per annum until $5,000 is paid and that each defendant is entitled to contribution from the other up to the amount for which each is held in solido, except that the United States Casualty Company is not entitled to contribution from its insured, Bradley C. LeMaire.
It is further ordered, adjudged and decreed that the fees of the expert witnesses are to be taxed as costs and fixed as follows: Dr. Gaulman Abshire, $35.00; Dr. Guy Dunning, $50.00; Dr. Perry Sudduth, $50.00; Dr. Norman Morin, $65.00.
It is further ordered, adjudged and decreed that defendants are to pay all costs of these proceedings.
*262 As thus amended, the judgment of the district court is reinstated and affirmed. The costs incurred in the Court of Appeal and in this Court are to he paid by Bradley C. LeMaire and United States Casualty Company.
HAMITER, J., concurs with written reasons.
SUMMERS, J., concurs in part and dissents in part.

. On first hearing another jury brought in a verdict in favor of plaintiff for $50,-000. However, the judge set this verdict aside and granted a new trial.

. See American Law Institute Restatement, Torts, Vol. 1, Section 485.

. Article 2318 reads: “The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors.”

. Waguespack v. Savarese, La.App., 13 So.2d 726; Smith v. Howard Crumley & Co. Inc., La.App., 171 So. 188 and Rodriguez v. State Farm Mut. Ins. Co., La.App., 88 So.2d 432.

. See also Harris v. Varnado, La.App., 94 So.2d 74 (1957), $3,000 and Jackson v. Young, La.App., 99 So.2d 400 (1957):, $4526.70, involving tke same type of injuries.