SAVOY, Judge.
This case and its companion case, Persinger v. McKeever, La.App., 160 So.2d 32, were consolidated for trial. For convenience, the facts and issue of both cases will be discussed in this opinion.
These suits for personal injuries and damages in tort arose out of two separate *28 automobile accidents wherein plaintiff was struck from the rear, first by an automobile driven by Houston L. Purvis on September 16, 1961, and then by an automobile driven by Ray McKeever on November 30, 1961.
In the first suit, plaintiff alleged that on September 16, 1961, at approximately 11:45 P.M., he was driving his 1960 Valiant automobile on Broad Street near its intersection with First Avenue, and was struck from the rear by a 1955 Chevrolet automobile which was driven by Houston L. Pur-vis. Houston L.* Purvis and his insurer, Southern General Insurance Company, were named as defendants in the suit. It was alleged that Purvis was negligent in following too closely; failing to keep a proper lookout; failing to' stop for a red traffic light; failing to keep his vehicle under control; and, driving into the rear of plaintiff’s automobile. In their answer to plaintiff’s petition, defendants denied that Houston L. Purvis was negligent, and alleged that the accident was caused by the negligence of plaintiff in increasing the speed of his vehicle in an apparent effort to go through a “caution” light, and then at the last fraction of a second, applying his brakes sharply and bringing his vehicle to a sudden and unexpected stop, thereby bringing about the ensuing collision. Alternatively, it is alleged that plaintiff is barred from any recovery by contributory negligence in taking such action as to mislead a following motorist, in failing to give a signal indicating his intention to stop, and in failing to keep his automobile under proper control.
The second suit was filed against Ray McKeever and his insurer, Grain Dealers Mutual Insurance Company. It is alleged that on November 30, 1961, at approximately 7:20 P.M., plaintiff was driving his 1960 Valiant automobile in an easterly direction along Broad Street, east of the city limits of Lake Charles, Calcasieu Parish, Louisiana; that he stopped at the intersection of Broad Street and Louisiana Highway 14 and was struck from the rear by a 1956 Ford automobile driven by Ray Mc-Keever in a negligent manner. The same allegations of negligence were alleged against Ray McKeever as were alleged against Houston L. Purvis in the first suit. The defendants filed answers to plaintiff’s petition, denying all pertinent allegations.
After a trial by jury, judgments were rendered and signed on the verdicts of the jury, awarding plaintiff $1,550.00 against Houston L. Purvis and Southern General Insurance Company, in solido, and awarding plaintiff $125.00 against Ray McKeever and Grain Dealers Mutual Insurance Company, in solido.
Plaintiff has appealed to this Court for an increase in the awards. Appellees in the first case, Houston L. Purvis and Southern General Insurance Company, have answered the appeal, requesting a reversal on the issue of liability, and alternatively, a reduction in the award.
The issues of liability and quantum are raised in the appeal of the first case. The only issue raised in the appeal of the second case, the companion case against Ray McKeever, is that of quantum.
In the first case before us on appeal, appellees, Houston L. Purvis and Southern General Insurance Company, maintain that although Purvis may have been at fault, yet the evidence shows that plaintiff’s actions constituted an entrapment and he was therefore contributorily negligent. However, the evidence was conflicting, and the jury evidently accepted the version of the accident as testified to by the plaintiff. Plaintiff testified he had stopped in a normal fashion for a red light within the inside lane of Broad Street, a four lane street, and was waiting for a red traffic signal to change; that after a short period of time, he was struck from the rear by the automobile being driven by Purvis. Plaintiff denied that he stopped suddenly. The investigating officer who questioned the drivers immediately after the accident, testified that if Purvis would have indi *29 cated the accident was unavoidable or that plaintiff stopped too suddenly, such statements would usually be placed in his report; but, instead, when the drivers were questioned, they were in agreement as to how the accident occurred.
We find the record substantiates the findings of the jury that Houston L. Purvis was negligent and that plaintiff was not contributorily negligent.
Turning now to the issue of quantum, the following questions are raised: Was plaintiff injured in the accident on September 16, 1961, and if he was, what was the extent of his injuries? The same questions are raised as to the accident on November 30, 1961. Then, what were the special damages arising out of each of the accidents ? The evidence is conflicting, and the answers to these questions of fact are made more difficult because of other injuries plaintiff received prior to and after the 1961 accidents.
The record shows that prior to 1961 plaintiff was injured on the job in 1954 and was involved in at least six rear end accidents with a 1954 model Plymouth automobile. Of these accidents, the most serious was on July 7, 1958. The treating physician, Dr. Norman P. Morin, an orthopedic surgeon in Lake Charles, examined plaintiff on July 10, 1958, and found plaintiff to have a neck injury, with a sub-luxation, or slippage of one vertebra over another, C-2 on C-3, which indicated a severe injury where the ligaments had been torn. Plaintiff was hospitalized for treatment. Dr. Morin testified that the treatments were not successful in bringing the neck back into its normal position, and consequently, the neck healed by a scar in that position. Dr. Morin treated plaintiff until June 2, 1959, at which time he felt plaintiff was still disabled 'from doing heavy work. Dr. Morin testified that plaintiff had a weakness in the neck, which, with excessive activity and even in the absence of any subsequent injury, could cause plaintiff trouble up until and even past the time of the trial of the instant cases.
Plaintiff remained off work following the 1958 accident until the later part of 1960. A suit involving the 1958 accident was settled. Plaintiff worked on several jobs as a pipefitter for about a year until September 15, 1961. There is a conflict in the evidence as to why plaintiff’s employment was terminated. Prior to the accidents in 1961, plaintiff began a job with Bechtel Corporation on June 12, 1961, and received a termination notice dated October 10, 1961, discharging him from this job for absenteeism from September 16, 1961, to October 10, 1961. Plaintiff testified he was not able to return to work because of the injuries received in the September 16, 1961, accident. There was evidence, although disputed, that he was discharged for flooding a control room. Also, plaintiff sustained a hernia on this job on or about June 26, 1961. He testified he was able to continue working by performing light duties until September 15, 1961. Plaintiff’s foreman testified that he did not notice any physical disability on the part of plaintiff, although the work involved some bending and stooping, and that plaintiff did not complain of being unable to do the work for any physical reasons. Plaintiff was paid workmen’s compensation until he received a lump sum settlement of $4,000.00 in June, 1962. He was operated on for the hernia approximately one week later.
Plaintiff also had other health problems. He was treated by Dr. David Buttross. Jr., a specialist in internal medicine in Lake Charles, in August of 1961 for episodes of hemoptysis. Earlier, Dr. But-tross treated him for “smothering spells”, and had taken a spinal tap to evaluate complaints of dizziness.
This brings us to the time of the accidents in 1961. The collision on September 16, 1961, was a minor one. Defendant, Houston L. Purvis, described the impact as very light, stating that he was hardly jarred. A passenger in the Purvis auto *30 mobile, J. C. Parker, a disinterested witness, stated he was not jarred even though he was not braced for the impact. Purvis’ automobile was damaged only to the extent of $55.00. There is evidence that the damage to plaintiff's automobile amounted to $621.65, but this is strongly disputed. Photographs of this automobile show only the slightest of damages. These show two small dents on the trunk lid, each less than six inches in diameter, and another small dent on the underside of the rear bumper. No other damage is apparent.
There is little question but that the collision on November 30, 1961, was a minor one. There was even some question raised as to whether plaintiff’s automobile was damaged in the amount of $105.37, as was shown by the testimony. The Ford automobile driven by defendant, Ray Mc-Keever, was not damaged.
Plaintiff was involved in still another automobile accident in January of 1963, when he rolled his car into the back end of •a Volkswagen bus. Plaintiff testified he paid over $700.00 to repair both vehicles.
After the accident on September 16, 1961, plaintiff saw Dr. David Buttross, Jr. ■on September 18, 1961. Since Dr. Buttross specializes in internal medicine, after taking X-rays and making an initial examination, he referred plaintiff for treatment to Dr. Edward W. Phillips, Jr., an orthopedic surgeon of Lake Charles. Dr. Phillips examined plaintiff on September 21, 1961, and found plaintiff to have a mild cervical spine sprain. He noted the X-rays showed arthritic changes antedating the accident of September 16, 1961, and stated that because of these changes, plaintiff was more susceptible to having more effects from an injury, and would take a longer period to heal, particularly because of his age, which was 58. Dr. Phillips recommended physical therapy treatments two or three times a week. Examinations were made on September 29, 1961, on October 10, 1961, and then on November 7, 1961, at which time plaintiff made additional complaints of pain in his arms and legs, and between his shoulder blades. Dr. Phillips recommended that plaintiff obtain a cervical traction device to continue his treatments at home. After a visit on December 8, 1961, Dr. Phillips recommended that plaintiff continue treatments as he saw fit. On a final visit to Dr. Phillips on January 5, 1962, plaintiff’s complaints were about the same. Dr. Phillips felt that an injury such as plaintiff received on September 16, 1961, would ordinarily heal substantially in about six months, and if plaintiff thereafter had some twinges or stiffness now and then, it would be difficult to tell whether this would be caused by the accident, or plaintiff’s arthritis. He felt that plaintiff’s taking of physical therapy treatments for four months as an out patient at the hospital was a prolonged period of time. Dr. Phillips believed that if plaintiff had any disability or complaints at the time of the trial in 1963, that such would not likely be related to the accidents in 1961.
Dr. Jerome W. Ambrister, an orthopedic surgeon of Lake Charles, saw plaintiff on May 23, 1962. He found tightness in plaintiff’s back, limited motion and tight hamstring muscles. He believed these findings could be due either to any injury, or to inactivity over a prolonged period of time. He found the X-rays taken on May 23, 1962, to show the same subluxation or overlapping of one vertabra with another, as did the X-rays taken in 1958. He felt that with only one examination he could not evaluate whether plaintiff was still having complaints referable to the accidents in 1961, in view of the prior injuries, and stated that the attending physician would be in a better position to evaluate the extent of the 1961 injury or injuries.
Dr. George P. Schneider, an orthopedic surgeon of Lake Charles, examined plaintiff on April 6, 1963. He found evidence of a rather severe spraining type injury of the cervical region, and some manifestations of a low grade sprain injury of plaintiff’s lower lumbar region. He found his X-rays showed no changes in the arthritic *31 condition in plaintiff’s back as compared with the 1958 X-rays. He found plaintiff to be disabled from doing heavy manual labor; recommended the use of a halter apparatus at home; and believed the symptoms would continue from six to eight months.
It is noted that Dr. Schneider’s examination was made after plaintiff’s automobile accident in January of 1963.
Plaintiff maintains that the awards were manifestly inadequate. He itemizes the medical expenses of $685.30, and the damages to his automobile of $621.65 from the September 16, 1961, accident; and of $105.-37 from the November 30, 1961, accident. These total $1,412.32. Plaintiff argues that he proved loss of wages at $155.00 per week from September 16, 1961, to March 5, 1963. Additionally, it is urged that plaintiff is entitled to a sizeable award for the personal injuries received.
Although the jury awards to plaintiff are conservative as compared to awards in other cases involving similar injuries and damages, in view of the recent holding of the Supreme Court in the case of Gaspard v. LeMaire, La., 158 So.2d 149, we do not find the jury’s award to be manifestly inadequate under all the facts and circumstances of this case.
The evidence is certainly strongly disputed, as well as conflicting, in all the items of proof. Apparently the jury either believed plaintiff was exaggerating his complaints, or that plaintiff’s troubles were caused mainly by factors other than the accidents in 1961.
First of all, there is the question of the proof of damages to plaintiff’s automobile arising out of the accident on September 16, 1961. Plaintiff’s witness, Johnny J. Calderera, owner of Joe’s Paint and Body Shop, testified that the automobile was damaged to the extent of $621.25. A portion of the work amounting to $172.80 was subcontracted to another firm. The evidence is sufficient for the jury to have accepted this amount. However, there was-also an evidentiary basis for the jury to have found the damages to be less substantial. Plaintiff testified that the damages did not appear as extensive as the bid for $621.25, yet another estimate was not obtained. The photographs introduced into' evidence indicate that the collision was a minor one. The jury may well have questioned whether such a minor collision could have possibly damaged the unitized body of the vehicle and required replacement of the steering wheel. Replacement of other items appear not to have been required. It is further noted that although the car was only four months old, it had been driven by plaintiff over 14,000 miles, and some question was raised as to a prior accident.
The jury may not have allowed plaintiff the full amount of the invoice for $435.00 by Lake Charles Memorial Hospital for the physical therapy treatments from September 21, 1961, to January 31, 1962. Plaintiff’s treating physician testified that this appeared to be a prolonged period for such treatment. Considering the over all evidence in these cases, including certain inconsistencies in plaintiff’s testimony, the jury may well have concluded that the treatments were not reasonably necessary as related to the 1961 accidents, and even possibly that such treatments were extended over this period of time because of plaintiff’s desire to exaggerate the seriousness of his injuries.
It is apparent from the size of the award that the jury did not make an award for loss of wages, evidently believing that the termination of plaintiff’s employment was due to something other than the accidents' of 1961. The jury may have concluded from the evidence in these cases that plaintiff could have continued his employment, but stopped working voluntarily for the purpose of these suits, or possibly for the purpose of the workmen’s compensation claim or because he was fired from the job. It is very possible that the jury believed plaintiff could have continued doing the light work he had been performing prior *32 to September 16, 1961, and that the mild cervical sprain did not disable plaintiff. The evidence shows that plaintiff drove his automobile over 2,000 miles between the time of the accidents on September 16, 1961, and November 30, 1961. If plaintiff had sustained a serious spraining injury, he would not likely have driven this far during this period of time.
The following invoices were proved: $25.00 — Drs. Warshaw and Cavin for X-rays on January 8, 1962; $40.00' — Dr. David Buttross, Jr. for an office visit and X-rays on September 18, 1961; $50.00— Dr. Edward W. Phillips, Jr.; and $15.30— Snell’s Limbs and Braces. The $120.00 invoice by Dr. George P. Schneider for X-rays and one consultation on April 6, 1963, may have been discounted by the jury as treatment not reasonably necessary or arising from the 1961 accidents, especially since plaintiff had been involved in a subsequent accident in January of 1963.
Of course, we have no way of determining how the jury arrived at its verdict of $1,550.00 against Houston L. Purvis and his insurer. Should the jury have allowed only a part of the cost of the physical therapy treatments and only a part of the repairs to plaintiff’s car for the September 16, 1961, accident, together with the proved medical expenses, then the jury may have allowed plaintiff up to nearly $1,000.00 for his personal injuries arising out of the accident on September 16, 1961.
Each of the medical experts agreed that the attending physician, Dr. Edward W. Phillips, Jr., would be in a better position to evaluate the extent of plaintiff’s injuries as related to the accident on September 16, 1961. Dr. Phillips classified plaintiff’s injury as only a mild cervical sprain.
With reference to the accident on November 30, 1961, it is apparent that the jury felt plaintiff was not injured in the collision since it awarded plaintiff only $125.00 against Ray McKeever and his insurer. This collision was so minor that the McKeever automobile was not damaged. Nor did plaintiff even report this accident to his treating physician, Dr. Phillips, on his next regular visit on December 8, 1961.
In view of the facts and circumstances of these cases, we affirm the judgment of the district court and hold that the verdicts rendered by the jury were neither manifestly inadequate nor manifestly excessive.
For the reasons assigned, the judgment appealed from in the case against Houston L. Purvis and Southern General Insurance Company is affirmed, with all costs of this appeal assessed against appellant.
Affirmed.