HALL, Judge.
James E. Sims sued Charles A. Heine and his liability insurer, Houston Fire & Casualty Insurance Company, for personal injuries and property damage resulting from an automobile collision which took place in the forenoon of May 3, 1962 near the corner of Canal and N. Roman Streets in the City of New Orleans. Defendants denied that Heine was guilty of negligence proximately causing the accident and reconvened for the damage caused the Heine vehicle and for personal injuries sustained by Mr. Heine. By third party demand State Farm Mutual Automobile Insurance Company was brought into the case as the liability insurer of Mr. Sims.
The Trial Judge rendered judgment in favor of plaintiff for $2,642.31 and dismissed defendants’ reconventional demand. He likewise dismissed the third party demand. Defendants appealed. Plaintiff answered the appeal seeking an increase in the award.
Defendants contend that the negligence of plaintiff, Sims, was the sole proximate cause of the accident. However, alternatively, defendants contend that if plaintiff’s negligence was not the sole cause it was at least one of the proximate causes and plaintiff should be held contributorily negligent.
The circumstances leading up to the accident were as follows:
Plaintiff, Sims, had been driving his car on Canal Street proceeding in the direction of the lake. When he reached the intersection of Roman Street he turned left into the neutral ground area of Canal Street and came to a stop. Thereafter he made a wide left turn into Canal Street in the direction of the river and came to a stop alongside a vehicle which was parked at the uptown curb of Canal Street some 30 to 40 feet (the distance is in dispute) toward the river from the corner of N. Roman Street, his intention being to back into the empty space behind the parked car. While stopped in this position his car was struck from behind by defendant’s automobile which had been proceeding on Canal Street in the direction of the river.
Plaintiff and defendant were the only witnesses to the accident itself.
Plaintiff’s version of the occurrence was: That while stopped in the neutral ground, he looked to his right and observed that *677 the traffic light at Galvez Street, two blocks away, was red holding up the river-bound traffic on Canal Street and that he saw no cars approaching within those two blocks. Then he proceeded into the river-bound roadway of Canal Street, turned to his left and came to a stop alongside an automobile which was parked at the uptown curb of Canal Street with the intention of either backing into or pulling forward into a parking place by a parking meter; that after he stopped he looked into his rear-view mirror and observed that there were ^no cars coming for at least one block to his rear; that he then debated where he would park his car because the car parked at the curb was straddling one of the two parking meters in the vicinity so that it was difficult for him to tell which parking position the parked automobile occupied; that he endeavored to look at one of the meters to see if there was any time left on it; that after being in this stopped position approximately five seconds he was struck from the rear by a terrific impact.
Defendant’s version was that he had been proceeding towards the river on Canal Street at about 20 miles per hour; that he first observed plaintiffs automobile when he was about one-half block away; that at that time plaintiff was stopped in the Canal Street neutral ground; that he did not see plaintiff’s car again until he was only 10 or 15 feet from Roman Street; that he didn’t recall whether he applied his brakes or tried to turn aside; that the right front of his car struck the left rear of plaintiff’s car; that plaintiff’s car was stopped dead when he struck it.
The river-bound roadway of Canal Street is approximately 35 feet wide and is divided into three lanes. The lane next to the uptown curb is reserved for parking, the middle lane and the lane next to the neutral ground are traffic lanes serving river-bound traffic.
The accident occurred in the middle lane where plaintiff had stopped preparatory to parking. Defendant had been travelling toward the river in that lane. The point of impact was at least 30 to 40 feet toward the river from the corner of N. Roman Street.
Defendant would have the Court believe that plaintiff suddenly shot out from a place of safety in the neutral ground at a time when defendant was only 10 or 15 feet from N. Roman Street and that it was too late then to avoid hitting him. We are unable to accept defendant’s version of the accident.
We estimate the distance from where plaintiff left the neutral ground to the place where he was struck from the rear to be at least 40 feet. If defendant was only 10 or 15 feet from the corner of N. Roman when plaintiff left the neutral ground he would have travelled only about 60 feet to the point of impact. Plaintiff travelled from a dead stop to a dead stop. Defendant was going 20 miles per hour. If defendant’s version of the accident is correct, he would either have passed in front of plaintiff’s car or else have struck it in the side while plaintiff was making his left turn. Even if plaintiff’s car was hit immediately upon coming to a stop in Canal Street, instead of some five seconds later as plaintiff testified, the defendant is bound to have been a considerably greater distance away from N. Roman Street than 10 or 15 feet when plaintiff left the neutral ground. Otherwise the collision would not have occurred in the manner that it did.
In his oral reasons for judgment the Trial Judge stated:
“The defendant Heine testified that when he was half a block away he saw the Sims car parked in the neutral ground. He next testified that the next time he saw the Sims car he was only 15 feet away. I do not know where he was looking in the meantime, but he travelled this half a block and did not see the Sims car at all during this half a block intervening, but certainly he was presumed to see it. He waá pre *678 sumed to see the Sims car come into Roman Street, make the turn and travel on according to Mr. Weilbaecher, 40 or 50 feet from the corner of Roman, and Mr. Weilbaecher is a disinterested witness. Now, further than that, the evidence is that his car is the only car on the street. If he had his car under control, he wouldn’t have run into this car.”
We are of the opinion that the proximate cause of the accident was the negligence of the defendant in not keeping a proper lookout. If he had been paying attention he would have had ample time to avoid the accident either by coming to a stop or by turning into the neutral ground lane and by-passing plaintiff’s vehicle. There were no other moving cars on the street either ahead or behind defendant.
Plaintiff had safely completed his turn and had been stopped in Canal Street some seconds before the collision. He had a right to stop where he did preparatory to parking. Any negligence- which might be attributed to him prior to that time had come to an end and did not contribute proximately to the accident. In our opinion defendant’s negligence was the sole proximate cause thereof.
Plaintiff contends that the award in his favor should be increased to at least $5,000.-00 plus the special damages. The Trial Court allowed him a total of $2,642.31, of which approximately $2,000.00 was for pain and suffering, the remainder thereof being for property damage, medical expense and other specials.
Plaintiff’s injuries consisted entirely of a cervical strain. He was given diathermy treatment by Dr. Kelly Stone, a general surgeon, on May 4, 7, 11, 14 and 17, and on June 9, 12, 15, 18, 21 and 26. Dr. Stone testified that between May 17 and June 9 plaintiff did not come in for treatment on account of his work. He further testified that when plaintiff first came to see him he was suffering what Dr. Stone characterized as “severe minor pain”; that the pain gradually diminished under treatment; and when last seen by him on June 26 plaintiff was having a minimum amount of discomfort. Dr. Stone told plaintiff to report back in three or four days if the pain continued, but he never came back.
Dr. Harry D. Morris, an orthopedist, examined plaintiff on September 12th, found that “he had some signs of continued disability” and was suffering “some discomfort” at the time. He found that plaintiff had a complete range of motion in his neck except that on rotating the head he had some pain in the left shoulder. Dr. Morris felt that in a matter of 6 or 8 weeks he would become completely normal and would have no residual disability.,
Plaintiff himself testified that his neck pained him for a couple of weeks after the accident. Thereafter the pain decreased. He stated that he still has some pain in his neck from time to time but it comes only when he has overextended himself in his work.
We are of the opinion that the Trial Court’s award is neither inadequate nor excessive. See cases cited in Cassreino v. Brown, La.App., 144 So.2d 608 at page 611. See also Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
For the foregoing reasons the' judgment appealed from is affirmed.
Affirmed.