LOTTINGER, Judge.
This is a tort action involving an automobile accident which occurred on April 18, 1964, in the Parish of East Baton Rouge, Louisiana. An automobile owned by J. A. Cannon and being operated by his wife, Grace C. Cannon, was stopped for a signal light on Fairfield Avenue at its intersection with Acadian throughway. While in a stopped position, the Cannon automobile was struck from the rear by a truck owned by Kalmbach-Burckett, Inc., a local grain and feed company which was being operated by Altrel L. Etier, an employee of Toups Truck and Tractor Service. As a result of the accident, Mrs. Cannon sustained personal injuries and on September 8, 1964, she and her husband instituted the instant suit, naming as defendant, Standard Accident Insurance Co., the liability insurer of the truck, and Employers Mutual Liability Assurance Corporation Ltd., the liability insurer for Toups Truck and Tractor Service, Mr. Etier’s employer.
Standard Accident Insurance Co. filed an answer wherein they denied coverage under the terms of the policy issued by them to Kalmbach-Burckett, Inc. The second defendant filed an answer in the name of Employers’ Mutual Liability Insurance Company of Wisconsin, and showed in the answer that they had erroneously been sued as Employers’ Mutual Liability Assurance Corporation, Ltd. On motion of plaintiff’s counsel, the suit was dismissed as of non-suit as against Standard Accident Insurance Company on October 7, 1964. The matter was tried on the merits on February 2, 1965, and on February 3, 1965, the Trial Judge, with written reasons, rendered judgment in favor of Mr. Cannon in the amount of $342.03, and in favor of *472 Mrs. Cannon in the amount of $3,000.00. From this judgment, Mrs. Cannon and Mr. Cannon devolutively appealed, asking for an increase in the award. Mr. Cannon’s appeal was subsequently abandoned by appellant’s counsel in his brief.
The appellee answered the appeal praying for a reduction of both judgments, but in his brief, Counsel for appellee abandoned his opposition to the award made to Mr. Cannon. There remains before us therefore only the question of the correctness quantum of damages awarded to Mrs. Cannon for her injuries.
■Mrs. Cannon was first treated on April 18, 1964, by Dr. Byars, a general practitioner who was her family physician. He saw her about one hour after the accident had occurred and at that time she was complaining of severe pain in her back and neck, and also some pain in the lumbar area of her back. Dr. Byars examined her and the only objective or clinical finding that he could make was that there was some spasm in the muscles of her neck. He ordered x-rays, which he said showed no evidence of any fracture or dislocation of her cervical spine, lumbar spine or pelvis, and he subsequently prescribed for her a pain reliever and advised the use of heat application. She saw Dr. Byars again on April 20, at which time she told him that the pain was more severe, that she had a very sore neck, and complained of some pain in her left arm. At that time, Dr. Byars gave Mrs. Cannon an injection of a mild pain reliever and prescribed tranquilizers in addition to the medication previously prescribed. She subsequently came into Dr. Byars’ office for ultra-sound treatments on three consecutive days, and was reexamined by the doctor on April 27. On that date, she complained to the doctor that she had severe pain at the base of her right fourth toe on the pad of her foot, and that this pain ran up the back of her leg. Upon examination, the doctor testified that he found some tenderness on the footpad to pressure, but that he felt no foreign bodies or broken bones. He x-rayed the foot and found only some soft tissue swelling under the footpad. He saw her thereafter on May 7, at which time Mrs. Cannon complained of severe pain in her upper left back and left shoulder and repeated the complaint about pain down the left arm. Dr. Byars testified that each time that he examined Mrs. Cannon,, he did neurological or orthopedic examinations, and he made the comment that when Mrs. Cannon had pain she seemed to get quite nervous with it. For this reason,, he prescribed for her a drug which was a, combination pain reliever and tranquilizer.
Subsequent to May 7, Mrs. Cannon came-in for two more ultra-sound treatments and was reexamined by Dr. Byars on May 25,. at which time she complained of pain at. the base of her right third toe. In order to rule out a possible extraneous cause,, there was a uric acid examination done on-Mrs. Cannon at the hospital, which examination showed as being within normal', limits. In view of the results of this examination, Dr. Byars testified that he felt that the pain around her toe was very probably due to her injury. After this-instance, Dr. Byars saw Mrs. Cannon three-more times, and on one of these occasions, she complained of pain in the right side of her chest, continuing pain in the left upper back, and a residual minimal pain with her toe. On the visit of June 5, he was of' the opinion that she had contracted pleurisy,, or a cold and he said that when he last saw her on July 7, he found her to be-markedly improved. She still had a little-pain with her toe, but he felt that he had', done the most that he could for her with reference to that complaint
When questioned by counsel for plaintiff' as to when he discovered that Mrs. Cannon had broken ribs, the doctor replied that he had not discovered any broken ribs.
Mrs. Cannon was next treated by Dr.. George, an orthopedic surgeon who first-saw Mrs. Cannon on August 12, 1964, at. *473 •which time she related to him that she had "been in an automobile accident and injured her shoulder, her right ribs and her right foot. He ordered x-rays made which were negative as to the shoulder, and which showed fractures through the narrow portions of the right third, fourth, fifth and possibly sixth ribs. He stated that these fractures appeared to show callous formations and were healing or healed. The right foot x-ray showed hypertrophic arthritic changes and stated that Mrs. Cannon’s primary complaint was that of pain in her foot. He said that after trying several different kinds of supports, he placed a sponge rubber pad underneath the head of Mrs. Cannon’s foot and found that to be entirely satisfactory. Mrs. Cannon visited him a total of six or seven times, with the last visit having occurred the day before the trial. On the date of the last examination, he said that her complaint was of pain in the thoracic region or the region of the fractured ribs, but there were no clinical findings to substantiate those complaints. He noted that she had not complained about her foot, but did say that in his opinion she would have to wear the sponge rubber pad in her shoe for an extended period of time. Dr. George, as did Dr. Byars, attributed the foot injury to the accident.
On cross-examination, Dr. George stated that the sponge rubber pad worn by Mrs. Gannon is worn inside of the shoe, that it is not visible and that it does not require the wearing of a specially made or corrective shoe and further that she can, while wearing that support, engage in any activity that she could before the accident. He also admitted that the hypertrophic arthritic changes revealed in the x-rays of the right foot existed before the accident.
Dr. Cracraft, an orthopedist, who testified on behalf of defendant, stated that he had seen Mrs. Cannon on November 23, 1964, at which time she complained of pain in her right foot and the back of the right lower leg, as well as intermitted pain in her low back. He performed a routine orthopedic examination on Mrs. Cannon and found in substance only a small bunion at the first metatarsal phalangeal joint and a slight tenderness to pressure beneath the third and fourth metatarsal heads. He reviewed the x-rays previously taken at the direction of Dr. Byars and Dr. George and found nothing in those x-rays inconsistent with that found by the other doctors. He did note in the chest x-rays, healing fractures of the right third, fourth, fifth and possibly sixth ribs. His general diagnosis was healed fractures of these ribs; a bunion of the right foot; probable lumbo-sacral strain, healed; hypertrophic arthritic changes of the lower dorsal and lumbar spine and possible Morton’s neuroma of the right foot. He testified that this Morton’s neuroma was a small tumor mass on a nerve which runs between the heads of the third and fourth metatarsals. He stated that these were generally spontaneous in origin, but could possibly be traumatic in origin as well. Dr. Cracraft felt that because there was the possibility of this neuroma, that if Mrs. Cannon continued to have pain that she should be examined in two or three months in order to see if she did in fact have such a neuroma.
Mrs. Cannon testified that she had been in an accident about a year before the one which precipitated the instant lawsuit, and that that one likewise was a rear-end collision. At that time she sustained injuries to her neck and arm, but testified that all of the injuries occasioned by the first accident were completely healed by the time of the second. Mrs. Cannon’s testimony is that she kept telling Dr. Byars about the pain in her ribs, but that he simply prescribed a heating pad, and further that Dr. Byars had told her that he was sure she had broken ribs. She testified that her right foot had been hurt in the accident and that thereafter she couldn’t wear shoes and had gone barefoot around her house whenever possible because when she was barefoot her foot did not bother her. She *474 further stated that since Dr. George had put the pad in her shoe she was able to wear shoes all day long. She said that she was unable to wear shoes without the pad for any length of time whatsoever. She stated that at the time of the trial, her back still hurt her, that she was unable to do any mopping, that sweeping was painful and that she was unable to iron at all. She did testify, however, that her neck was perfectly well at the time of the trial, and that the pain in her neck had cleared up within about three months from the time of the accident.
The Trial Judge, in his written reasons for judgment, reviewed the testimony of the various doctors and noted therein that although Mrs. Cannon was treated by Dr. Byars from the time of the accident on April 18, 1964, until July 7, 1964, that it was not until April 27, 1964, that she made a complaint to him relative to her foot. He also notes therein that at no time prior to Mrs. Cannon’s examination by Dr. George in August of 1964, was there any mention made of fractured ribs, Dr. Byars having testified that he had no knowledge of fractured ribs and that he did not have x-rays made of that area. Based on this, the Trial Judge concluded that the plaintiff had not shown by a fair preponderance of the evidence that she suffered rib fractures in the accident with which this suit is concerned. He noted that it was significant that at the time of Dr. George’s examination of the plaintiff on the day before the trial, that she made no complaints to Dr. George which were attributable to either the possible neuroma of the foot or to the bunion. The Trial Judge’s conclusion was that as a result of the accident Mrs. Cannon still, at the time of the trial, had some disability in her right foot, although apparently completely relieved by the use of the arch support, and that she probably still had some disability in her low back which might persist for an indefinite period of time.
Counsel for appellant has cited to us i» his brief, numerous cases in which awards-were made in excess of that which was made in this case, and in which cases, he-alleges, the injuries suffered by those persons were quite similar to the injuries-suffered by the plaintiff. We have examined these cases and find that for the-most part, the injuries suffered by the-plaintiffs therein were considerably more-serious than those suffered by the plaintiff in the instant suit.
One case which we did note, and in which the injuries were somewhat similar, was that of Doyle v. Central Mutual Insurance Company, La.App., 139 So.2d 766, in which a 25 year old female was involved in an accident at a time when she had been pregnant for about two months. No complications had developed during her pregnancy and the baby was born normally at the time that it was expected, with the accident having produced no ill effects as to the pregnancy or as to the child. This accident, like that in the instant case, was a rear-end collision in which Mrs. Doyle was initially treated by her family physician, complaining of pain in her back, with the pain radiating down her right leg and pain in her neck. In the seventeen month period which elapsed between the date of the accident and the time of the trial in the Doyle case, Mrs. Doyle visited her doctor six times. During all of that time, her physician was unable to find any muscle spasm or objective signs of the injury, and his treatment consisted of physiotherapy and drugs. The doctor’s diagnosis of Mrs. Doyle’s injury was a strain of the muscles on the right side of her neck and a possible strain of the back.. No x-rays were taken and the total medical bill for the six visits during which Mrs. Doyle complained of back pain amounted to $30.00. The family physician’s diagnosis-of low back sprain was concurred in by an orthopedic surgeon who examined Mrs. Doyle, and he was likewise unable to find any muscle spasm or other objective sign of injury. In this case the Trial Court *475 .■awarded Mrs. Doyle the -sum of $2,000.00 ■for her injury.
In connection with our review •of the quantum of 'damages as assessed by Trial Courts, we are necessarily governed by the decisions of the Supreme Court of Louisiana as set forth in Gaspard v. Le Maire, 245 La. 239, 158 So.2d 149, as further explained and amplified in the case of Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64. In applying the rules set forth in those cases to the instant case, we find that the assessment of damages in this case "by the Trial Court is neither manifestly erroneous nor does it constitute much of an abuse of the discretion vested in the Trial 'Court in assessing damages. Mrs. Cannon was, at the time of the trial, a 55 year old woman, who as a result of the accident 'had sustained injury to her back and neck, with a subsequent manifestation of that injury appearing in.her right foot. We, as did the Trial Judge, do not believe that the plaintiff has borne the burden of proof in connecting her broken ribs with the accident in question. The only residual of these injuries which was present at the time of the trial, was the foot discomfort, which was completely alleviated by the wearing of a small rubber sponge under the ball of her foot, and possibly some minimal back pain which might persist for :an indefinite time after the trial. We might .add, that only the plaintiff’s complaint -relative to her foot disability is substantiated by clinical findings. Mrs. Cannon was never 'hospitalized, never placed in traction nor did she ever undergo any surgery.
In the light of the above and foregoing, we find that the judgment of thf Trial Court is correct and should not be disturbed.
In the judgment rendered the award is made against Employers’ Mutual Liability Assurance Corporation Ltd., of Wisconsin, whereas the award should be rendered against Employers’ Mutual Liability Insurance Company of Wisconsin. Let'the judgment be corrected accordingly.
The judgment is accordingly affirmed as amended at appellant’s cost.
Judgment amended and affirmed.