TAYLOR, Judge.
Erica Victor, a minor, was a customer on the premises of Natal’s Supermarket on the morning of June 12, 1966. She was in the process of purchasing bubble gum from a machine located near the check-out counter when another customer, Charlene Carrie, who had taken a six-bottle carton of Barq’s Root Beer from a rack, passed near and behind her. One of the bottles from this carton fell to the floor, broke and the glass cut the back of Erica Victor’s leg.
Employees attempted to stop the flow of blood, unsuccessfully, and she was taken by ambulance to Charity Hospital and from there to Flint-Goodridge Hospital where the wound was sutured. The injury subsequently required extensive treatment, hospitalization, an operation and immobilization in a cast for three weeks.
Suit was brought on June 5, 1967 by Margaret Gould, individually and as tutrix of her minor child, Erica Victor against Natal’s, Inc., John Doe, d/b/a Natal’s, Inc., Phoenix Assurance Company, Barq’s Beverages, Inc., and the Aetna Insurance Company.
After trial a judgment was awarded plaintiff, individually, in the amount of $921.93, for the medical costs expended by plaintiff for her daughter’s treatment and as the natural tutrix of Erica Victor in the full sum of $10,000.00, together with legal interest and costs, against defendants Barq’s Beverages, Inc., and Aetna Insurance Company. The judgment dismissed plaintiff’s suit against Natal’s, Inc., and its insurer the Phoenix Assurance Company.
From this judgment Barq’s Beverages and the Aetna Insurance Company prosecute this appeal.
Plaintiff did not appeal from the dismissal of her suit against Natal’s and its insurer, and that dismissal is now final.
Appellants contend that the plaintiff failed to prove:
1. That there was a defective carton
2. That defendant knew or should have known of the defect in the carton
3. That the defect in the carton was the cause of the injuries sustained by plaintiff
and:
that plaintiff has not proven defendants are liable for Erica Victor’s injury.
We do not agree.
From a reading of the entire transcript there is no doubt that the carton from which the bottle fell was defective. Erica Victor testified as follows concerning the condition of the carton:
“ * * * it was, after I felt this pain and I saw she was holding this carton of Barq’s in her hand and the bottom of the case was baggy or busted you could see.
“Q What do you mean by baggy or busted, could you define that a little bit?
“A Baggy enough for bottles to fall out the bottom.”
Mr. Frank Natal, corroborated the fact that the carton was in poor condition by the following testimony:
“Q Would you describe it, was it wet?
“A No, it was not wet. One corner of of the carton was deteriorated and this was a Barq’s Root Beer carton.
“Q And what do you mean by deteriorated ?
*719 “A Well, it was sort of, like they had a mold, maybe with a little age it might have deteriorated but the rest of the carton was in good shape.”
He further stated on cross-examination that the deterioration was at the bottom edge of the carton.
Under cross-examination by counsel for appellant, Mr. Natal also tracked the movement of the cartons as they came into his store. The cartons are brought in by an agent of Barq’s with four six-bottle cartons in a wooden case. They are either removed from the case and placed on racks in the store for purchase or, if delivered to the storeroom, they remain in the case and are put on a pallet or placed on top of overturned cases. All the while they are in the storeroom they remain in the case and never contact the floor. When resupplying the racks in the store the whole case is brought in and the cartons are then removed from the case and placed in racks.
Mr. Jerry Mackiewicz, a claims adjuster in July, 1966, employed by E. J. Halverson & Company, investigated this accident. At Natal’s Supermarket he was given the carton by Mr. Natal and had occasion to examine the carton. He identified it as a Barq’s carton and testified to its condition as follows:
“Q During the process of your examining the carton and the bottles, did you notice any defects in the carton?
“A Yes, one of the corners, the edges coming from the edge back maybe about an inch-and-a-half or two inches on either side was torn and it appeared as if the bottle could have possibly slipped through this carton.
“Q Would the whole bottom have been broken ?
“A The entire bottom of the carton, no.”
Charlene Carrie who had taken the full carton off the rack testified, “One of the bottles slipped from under the bottom of the case and hit her on the leg.”
The trial court was satisfied that the carton was defective and that the bottle fell through it and caused injury to the plaintiff’s daughter. The record amply fortifies this conclusion and we are in accord with the trial court’s finding of fact in this respect.
The second contention of appellant, that defendant knew or should have known of the defect in the carton, is also a question of fact resolved by the trial judge. The appellants inspected their own cartons. However, this was done visually, and with the four cartons already placed in the case. Therefore those inspecting cannot see the condition of the bottom of the cartons. The cartons are not removed from the case for inspection purposes.
The trial court concluded that the deteriorated condition of the carton was because of the fault of the appellant. We agree with his finding of fact and the record substantiates this as a fact.
The third contention is that plaintiff failed to prove that a defect in this carton was the cause of injuries sustained by plaintiff’s daughter.
Again the trial judge obviously concluded that there was a defect in the carton and that defendant was negligent in permitting this defective carton to be delivered to Natal’s Supermarket. Furthermore the court found that a bottle of Barq’s slipped or fell through this defective part of the carton breaking and causing the plaintiff’s daughter’s injuries. The purchaser of this carton of Barq’s testified the bottle fell through the bottom of the carton and that she was not swinging the carton so as to cause the bottle to fall out. We are in accord with the complete factual finding of the trial judge.
The next assignment of error appellant urges is that the amount of $10,-000.00 awarded to the plaintiff for her minor daughter’s injuries is excessive.
*720 An award for personal injuries is an impersonal, objective evaluation by a trial court for the purpose of adequately compensating one injured. It is obvious that no two people are ever injured, suffer, recuperate and then live with residual effects of an injury exactly the same.
Erica Victor, the injured minor, received a cut on the back of her left leg which bled profusely and could not be stopped by the emergency unit from a fire station. She was rushed to Charity Hospital and removed to Flint-Goodridge where the wound was cleansed and sutured. She returned home with her leg unable to bear her weight. A week later because of an infection she went to the doctor’s office where the wound was reopened and left open to drain. At this time “her ankle was swollen and she walked a steppage gait and had a foot drop. She was placed on rest and elevation of the extremity and elastic bandaging and warm daily soaks.” The doctor attributed the infection to the unclean glass which cut her leg. Erica Victor complained of pain, tingling, numbness in this leg and was in need of crutches for at least four to five weeks in order to ambulate. Approximately four months after the accident she was still experiencing these symptoms as well as swelling on the outside of the ankle and pain in the area of the scar. This pain continued and she was referred by her doctor to a neurosurgeon who found nerve involvement and recommended a course of treatment to her doctor which consisted of injections in the area to relieve pain. These injections were unsuccessful.
On August 7, 1968, an exploratory operation was performed on the scar to relieve the pain caused by infringement on the nerve at this site. Erica Victor was in a cast from her hip to her toes for approximately three weeks after this operation. It was not until six weeks after the operation could she put full weight on this leg.
Her doctor testified that Erica will have decreased sensation, tingling, a perversion of sensation and some discomfort in the area of the scar and that this is permanent. The doctor further stated that there exists evidence at the site of the injury of “more scar formation which would tend to make the prognosis somewhat darker or bad because of the possibility [of] more scar tissue forming and subsequently re-entrapping this nerve in the leg there.”
This is a permanent condition which Erica must tolerate. She testified at length as to her condition from the accident until the present. She must restrict her physical activities and suffers pain if she stands too long, or if she wears any apparel which comes in contact with the scar such as boots, galoshes or pants with heavy cloth. The doctors all recognize that she is more emotionally upset because of her injury and the unsightly scar and that she suffered depression especially after the operation when the symptoms again manifested themselves.
The trial judge concluded that for the injury, pain and suffering, both physical and mental, and her future pain and discomfort an adequate award would be $10,000.00. The only question we need thus consider is whether the trial court abused the great discretion granted it by our Civil Code and our jurisprudence in arriving at this figure. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). After a careful consideration of the record we can only answer this question in the negative. Although defendant has cited us to several cases in which a lesser award was given to compensate a similar injury, we do not find an abuse of discretion by the trial judge. It is not the function of this court to insure uniformity of awards for similar injuries. Each case has its own unique facts and ramifications and must be decided on its own merits. We are in accord with the award made by the trial court and conclude that it is neither excessive nor inadequate.
*721 For the foregoing reasons the judgment of the trial court is affirmed. Costs of this proceeding to be borne by defendants-appellants.
Affirmed.