HALL, Judge.
Plaintiff sued Alfred Schade (hereinafter referred to as “defendant”) and his lia *2 bility insurer for personal injuries and losses incurred in an accident involving his motorcycle and an automobile owned and operated by defendant. The trial resulted in a judgment for plaintiff in the total sum of $9,632.34. Defendant, Schade, and his insurer appealed. Plaintiff answered the appeal seeking a $3,500.00 increase in the award.
The accident happened at about 6:00 P.M, on February 20, 1963 at the intersection of Canal and St. Anthony Streets in the City of New Orleans. Canal Street is a broad thoroughfare running from the river towards the lake and consists of two roadways divided by a neutral ground. Each roadway is approximately 28 feet wide and consists of two lanes for moving traffic and a third lane next to the curb for parking. The moving traffic lanes are divided by a white stripe.
St Anthony Street runs in an uptown-downtown direction and crosses Canal Street at right angles at a distance of about two blocks (one extra long block) river-wards from the head of Canal Street which is at City Park Avenue. There is a traffic light at Canal Street and City Park Avenue.
At the time of the accident the weather was fair and the streets dry. It was just getting dark and all vehicles had their lights on.
Defendant’s automobile had been parked facing toward the river at the uptown curb of Canal Street at a distance of approximately 10 feet toward the lake from the corner of St. Anthony Street Defendant, who was sitting in the driver’s seat, started his engine and attempted to execute a left turn across the uptown roadway of Canal Street with the intention of crossing through the neutral ground and proceeding toward the lake on the opposite side of Canal Street.
Defendant testified that as he pulled away from the curb he looked back toward the lake for approaching traffic. He noticed the lights of on-coming vehicles which he believed to be some distance away, and believing it was safe to do so, proceeded to make a left turn from his parked position toward the opening in the neutral ground. Just as the front of his car crossed the white line dividing the moving traffic lanes and entered the traffic lane closest to the neutral ground, his wife and daughter who were accompanying him in the car, cried out “Look out. Pie is coming awfully fast.” He further testified that he slammed on his brakes and came to an immediate stop, but plaintiff’s motorcycle struck his car over the left front wheel and plaintiff was catapulted over the hood.
Plaintiff, operating a motorcycle, had been proceeding toward the river in the uptown roadway of Canal Street at between 25 and 30 miles per hour (speed limit 35 m. p. h.). According to plaintiff’s testimony he had been travelling in the lane next to the neutral ground all the way from City Park Avenue. Although there is some testimony that plaintiff had switched from the right lane to the left lane between City Park Avenue and St. Anthony Street that fact, if true, has no bearing on the question of liability because if he switched lanes he did it some distance away from the place where the accident occurred.
The point of impact between plaintiff’s motorcycle and defendant’s automobile was in the left or neutral ground traffic lane approximately 4 feet from the neutral ground. At the time of the collision defendant’s car was approximately perpendicular to the neutral ground and plaintiff’s motorcycle hit it squarely over the left front wheel.
Defendant did not see the motorcycle until the warning cry from his wife and daughter. He was then, according to his testimony, half way across the neutral ground lane in which plaintiff was travel-ling. He testified that at that time plaintiff was about 80 or 90 feet away.
Plaintiff testified that he was looking straight ahead and did not see defendant’s car pull out from the curb; that he first *3 saw it when defendant’s left front fender crossed the white line separating the moving traffic lanes; that he was then only l'l/i car lengths away; that he tried to veer to the left hut defendant’s car continued to move across his lane of traffic and cut him off.
Defendant was grossly negligent in attempting the left turn. See Washington Fire & Marine Insurance Company v. Firemen’s Insurance Company, 232 La. 379, 94 So.2d 295 and cases there cited. See also Codifer v. Occhipinti, La.App., 57 So.2d 697 and cases there cited.
Although appellants do not concede defendant’s negligence, they contend as their primary defense that plaintiff was guilty of contributory negligence such as to bar his recovery. They point to the fact that plaintiff admittedly did not see defendant’s car until he was too close upon it to avoid the accident, and contend that had he been keeping a proper lookout he would have seen defendant’s car in time either to stop or pass in front of it,
We are of the opinion, as was the Trial Judge, that plaintiff was not contrib-utorily negligent. He had the right of way and was travelling at a legal rate of speed in the inner lane of the roadway close to the neutral ground curb. His attention was necessarily devoted primarily to traffic in front of him, and he was under no duty to watch cars parked at the opposite curb of his three lane roadway. Moreover had he seen defendant’s car when it first pulled from the curb he was entitled to expect it to continue towards the river in the middle lane of traffic which was clear, and not to cross over in front of him. When he observed that defendant was coming over into his lane he did everything possible to avoid the accident but it was too late.
The remaining issue is quantum. In his written reasons for judgment the District Judge itemized the damages allowed plaintiff as follows:
1) Property damage to motorcycle $ 420.38
2) Loss of wages — Drs. Harley-Davidson 262.50
3) Loss of wages — Texas Pacific RR. 1,187.16
4) Future doctor’s services for hernia repair 150.00
5) Future hospitalization for hernia repair 400.00
6) Future loss of wages for hernia repair (approximately 6 weeks disability) 712.30
7) Pain & suffering, past, present and future 6,500.00
Total $9,632.34
Appellants do not dispute items (1), (2) and (3). They contend that any hernia plaintiff might have was not a result of the accident and therefore contend that all items of damages connected with the hernia should be disallowed. They also contend that the item for pain and suffering is manifestly excessive.
On the other hand, plaintiff, who answered the appeal, contends that the award for pain and suffering should be increased to $10,000.00.
Plaintiff was catapulted over the hood of defendant’s car to the pavement on the opposite side and was rendered unconscious for 30 to 45 minutes. He was removed to Southern Baptist Hospital by the New Orleans Police Department Crash Unit and remained in the hospital until February 22, 1963. His injuries were diagnosed as multiple abrasions of both knees, contusion and laceration of the parietal region of the head, possible cranial injury, small laceration of right ankle, right thigh and right ankle swollen and blue. He was not examined for hernia at the hospital. While at the hospital he was given demoral for pain and drammamine for dizziness and *4 was discharged from the hospital with crutches on February 22, 1963 and sent home to bed. He remained at home in bed for approximately four weeks. Thereafter he was allowed to walk around on crutches and was discharged to return to work on or about May 3, 1963. He was out of work for approximately 11 weeks.
Plaintiff’s full time occupation was that of a switch engine foreman for the TPMP Terminal Railroad. He also had a part time job at Doc’s Harley-Davidson Motorcycle Shop, where he repaired motorcycles. As a switch engine foreman he was required to climb and jump on and off moving cars. At the motorcycle shop he was required to work in a stooped position and to lift heavy objects. At the time of the trial plaintiff testified that he was unable to stoop or pick up heavy objects without incurring pain in his groin. He also testified that he had difficulty keeping up with his railroad work on account of pain in his ankle. He had an audible click in one knee which he demonstrated to the Court.
Plaintiff’s treating physicians were the members of a firm of industrial surgeons who are employed as company doctors for the railroad employees. They also “do a good deal of work” for the defendant insurer in this case. They either did not have or could not locate any record of the number of times they saw plaintiff or of their treatment. The only record produced was the Southern Baptist Hospital Record of their treatment of plaintiff while he was confined to the hospital from February 20th to February 22nd. The Trial Judge noted that he was “very disappointed in the lack of cooperation in this instance by the Doctors in question, which does not reflect on either counsel.”
The only medical witness produced by appellants was Dr. William A. Roy, a general surgeon. He examined plaintiff on May 27, 1963. Plis examination revealed a ;Hs inch swelling in the left ankle. The ankle had a normal range of motion but produced pain at the extreme of plantar-flexion on the right. He also found that plaintiff had a recurrent left inguinal hernia. X-rays of the ankle showed some irregularity and revealed what “could possibly represent a chip fracture, but should certainly be evaluated clinically.” Dr. Roy did not think there was a chip fracture of the ankle or that the hernia which he observed needed repair. He did not examine plaintiff’s knees.
Dr. David Aiken, a general surgeon, examined plaintiff on April 7, 1964. He found that plaintiff had a left inguinal hernia, moderate in size, but increasing. He found a click in the left knee, but no swelling, tenderness or loss of motion. He also found an increase in circumference of the right ankle with thickening of the tissues. He had x-ray pictures taken of the ankle which revealed certain abnormalities. His diagnosis was traumatic arthritis of the ankle. X-ray pictures of the left knee revealed a slight permanent change in the osteochondral surface of the femoral con-dyle of the patella “which could become the basis of a further degeneration and trouble to the patient in later life.”
Dr. Aiken attributed the hernia and the ankle and knee injuries to the accident of February 20, 1963. He strongly recommended surgery for the hernia, but was of the opinion that nothing can be done for the ankle, that it will not improve and that plaintiff will continue to have “difficulty in climbing, taking straining steps, jumping, walking over rough ground, over railroad ties and in performing the extreme positions such as are involved in stooping.”
The Trial Judge found that plaintiff suffered a recurring inguinal hernia as a result of the accident and that surgery was indicated. The arthritic condition of his ankle is a permanent residual. We find no manifest error in the Trial Court’s evaluation of the medical testimony.
The record sustains the Trial Court’s allowance for the cost of the herniaplasty and for the loss of six weeks wages which the operation will necessitate. Under the *5 circumstances of this case we do not find that the award of the Trial Court is either manifestly excessive or manifestly inadequate. See Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
For the foregoing reasons the judgment appealed from is affirmed; costs of both Courts to be borne by defendants-appellants.
Affirmed.