AYRES, Judge.
This is an action in tort arising out of a motor vehicle collision of August 13, 1965. Plaintiff was awarded the sum of $500 for personal injuries. Defendant Trinity Universal Insurance Company deposited in the registry of the court the amount awarded plus interest and costs. Nevertheless, plaintiff prosecutes this appeal contending that the award should be increased to $5,000.
The quantum of damages is the only question presented for consideration. This is a factual question, dependent for resolution upon the nature, extent, and duration of the injuries inflicted upon plaintiff.
In giving consideration to the facts and circumstances upon which the award was based, there are certain legal principles by which we must be guided. For instance, as provided in LSA-C.C. Art. 1934 (3), we, as an appellate court, are admonished that “In the assessment of damages * * * much discretion must be left to the judge or jury, * * *.” This principle was emphasized in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), and Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964). In the latter case it was pointed out that the review of the facts and circumstances on which a trial court bases the quantum of an award “is confined to determining whether there has been an abuse of the ‘much discretion’ vested in the trial court in asr sessing damages. * * * ”
The basis of plaintiff’s complaints is that she suffered a mild to moderately severe injury to her cervical spine and a painful, and, at times, disabling, knee injury, and that she became emotionally affected by reason of the accident.
Following the accident in which plaintiff was injured, she was carried to the emergency room of the Highland Hospital. First aid was administered and she was released. However, because of increased pain, in one of her knees, she returned to the hospital later in the day. On that occasion, X-rays were made and she was given Darvon for the relief of pain.
On the third day following the accident, plaintiff placed herself under the care and treatment of her family physician, Dr. William F. Drummond. Dr. Drummond reported, from an examination on that occasion, plaintiff had sustained a bruised type laceration immediately below the left knee, accompanied by swelling in that area. Swelling was also noted above the left eye, but no external evidence of a bruise existed. The lacerated area of the knee was treated. The following day, the knee, though painful, was noted to be less swollen. A hematoma persisted which had, however, a week later, greatly diminished. No other complaints were noted at that time. Complaints were made September 1, 1965, that the whole knee burned, but that, although the kneecap was tender, it was not painful. The lacerated area was noted to be healing quite well. The hematoma had continued to decrease. On this particular visit there was noted, for the first time, plaintiff’s complaint of pain in her neck.
A small hypoesthesia was noted below the injured knee on the occasion of plaintiff’s visit to her doctor September 8, 1965. The lacerations, however, had healed. Little, if any, discomfort was noted in walking. The doctor testified as of the latter date plain *266 tiff was asymptomatic. A history of neck pains from 1957 was related to acrobatic activities. A recurrence was noted in 1961. That the accident had causal relationship with the complaints of pain in the neck was therefore discounted by the doctor.
It was also noted, on the last of these examinations, plaintiff was very emotional. Her posture was poor and, though 5' 9" tall, she carried a weight of approximately 290 pounds. Within a period of two weeks, plaintiff was able to and did return to work. No residual disability was thereafter noted by Dr. Drummond.
Dr. E. C. Simonton, an orthopedist who examined plaintiff for the first time November 17, 1965, and a second time January 7, 1966, testified there were no complaints on those occasions with reference to the neck or cervical sprain. It was noted, however, such complaints were made to him for the first time February 23, 1966. As to these, an examination disclosed no objective basis. Cervical sprain would, in the doctor’s opinion, have manifested itself much sooner after the accident.
Dr. George E. Wilson, who first examined plaintiff December 9, 1965, diagnosed her condition as a mild cervical myoligamentous strain. However, on December 15, 1965, no spasm was noted in the cervical muscles. But the doctor was uncertain and expressed doubts plaintiff had sustained a cervical strain in view of examinations made in the meantime which disclosed no spasm or other objective basis therefor.
Dr. Willis J. Taylor, an orthopedist, examined plaintiff February 8, 1966, and December 2, 1966. No evidence of residual disability or abnormality in the cervical area was noted.
From our review of the record, we do not find, as evidently the trial court did not, any injury to plaintiff’s neck or cervical area attributable to the accident. The proof in that regard does not preponderate in plaintiff’s favor; hence the claim based thereon is not established to that degree of certainty upon which a judgment may be based.
Plaintiff did, however, sustain an injury to her knee. The healing of lacerations thereon left two slightly visible scars below her knee with a dollar-size area of hypo-esthesia. It was not shown there was any residual disability in the knee; the lacerations readily healed; the hypoesthesia was only temporary.
With reference to the knee injury, plaintiff contends the accident produced a condition known as chondromalacia, described as a roughening of the articular surface of the patella. This condition was first noted by Dr. Simonton November 17, 1965, in a report in which he stated “plaintiff has symptoms and signs indicating a probable resultant roughening of the articular surface of the patella.” He stated, however, that plaintiff was not having sufficient trouble with that condition to warrant treatment other than the occasional use of Indo-cin, an antiflammatory drug. In the absence of improvement, he observed an injection would be advisable.
The doctor expressed an opinion that trauma in some degree was prerequisite to an onset of chondromalacia. The belief was that a direct blow to the knee during the accident precipitated the condition.
Dr. Wilson, in his examination of December 9, 1965, noted the condition of plaintiff’s knee which he described as bursitis, the occurrence of which he attributed to the accident by reason of the direct blow to the knee. This condition, as he described it, usually disappears. On the occasion of his second examination, December 15, 1965, no evidence of the existence of bursitis was found. Dr. Taylor, who subsequently examined plaintiff, was also unable to find any evidence of bursitis. As to whether the accident precipitated its development, Dr. Taylor was of the opinion that, if precipitated by trauma, bursitis would evidence itself within a period of seven to ten days after an accident.
*267 Finally, it must be noted that we find no basis for concluding plaintiff was emotionally upset and disturbed by reason of the accident. According to her physician and a social worker of the Mental Health Center, she had had these problems for many years.
Injuries primarily sustained by plaintiff consisted of bruises to her knee and two lacerations below the knee which required minimal treatment and no sutures. She was not hospitalized; nor did she lose more than two weeks from work. No permanent residual disability was established.
We do not find any abuse of the “much discretion” of the trial court in fixing the quantum of damages to compensate plaintiff for the injuries sustained.
For the reasons assigned, the judgment appealed is affirmed. Plaintiff-appellant is assessed with the costs of the appeal.
Affirmed.