SAMUEL, Judge.
This is a suit for personal injuries and property damages incurred in a collision between plaintiffs’ automobile and defendants’ truck. The accident happened on August 9, 1963, when the injured plaintiff, Mrs. Barras, a housewife, was 31 years of age. She seeks recovery for personal injuries; the other plaintiff, her husband, sues for damages to his automobile and medical expenses incurred on her behalf. Defendants are M. & J. Construction Company, a partnership, and the individual partners, Michael C. and Joseph A. Bada-lamenti, owners and operators of the truck. State Farm Mutual Automobile Insurance Company intervened for the subrogated amount it had paid plaintiffs for automobile damage in excess of a $100 deductible policy it had issued to plaintiffs.
After trial judgment was rendered in favor of plaintiffs and the intervenor, awarding Mrs. Barras $3,000 for her personal injuries and awarding Mr. Barras and the intervenor the sums for which they had prayed. On application of defendants the trial court granted a new trial for the limited purpose of amending the judgment. Thereafter a judgment on new trial was rendered in favor of plaintiffs and the intervenor, awarding Mr. Barras and the intervenor the same amounts as contained in the original judgment but reducing the award to Mrs. Barras from $3,000 to $2,200. Defendants have appealed contending only that the award to Mrs. Barras for pain and suffering is excessive because she sustained only a mild cervical strain or sprain. This is the sole issue before us.
Insofar as concerns quantum, the record contains the testimony of the plaintiffs and the medical reports, received in evidence by stipulation, of Dr. A. G. Klein-schmidt, Jr., an orthopedic surgeon who had been the treating physician, Dr. George D. Lyons, an ear, nose and throat specialist, and Dr. Ray J. Haddad, Jr., an orthopedic specialist.
Mrs. Barras testified as follows: She had been completely well and healthy prior to August 9, 1963. Shortly after the collision she felt pain in her left arm and hand and the hand became swollen. She saw Dr. Kleinschmidt the day of the accident. He examined her, gave her a prescription and later ordered x-rays taken. The prescription made her ill and after the first day the doctor gave her others, one for pain and another which she understood was a muscle relaxant. She proved to be allergic to this medication also, was unable to take the same as prescribed and after a week completely discontinued taking the pills for relief of pain. A week after the accident she developed a lump in the side of her neck and Dr. Kleinschmidt advised her to see Dr. Lyons. Dr. Lyons treated her and suggested she return to Dr. Kleinschmidt. She was under the care of Dr. Kleinschmidt until the middle of October, 1963. A part of the treatment she received from Dr. Kleinschmidt consisted of therapy in the form of neck traction, described by this witness as *813 stretching her neck for increasing periods of time each day, and heat from an infrared lamp. She also saw Dr. Haddad on two occasions, April 7 and May 5, 1964, because she continued to have problems with her neck. Since the accident she has suffered pain in the area of her hand, arm and neck and, particularly with regard to the neck, continued to do so at the time she testified more than seven months after the collision. The pain now consists of a muscle ache with a pulling sensation and is less severe than it was. When she does housework involving neck bending, such as ironing or mopping, the trouble starts again.
Mr. Barras testified he saw his wife’s swollen hand the evening of the accident and helped her to remove a ring from her finger. She complained of pain and often used a heating pad following the accident, on some nights sleeping with it around her neck. He noticed she had increased pain when she tried to iron.
Dr. Kleinschmidt’s report shows: He first saw Mrs. Barras on August 9, 1963, the date of the accident. She informed him she developed pain in her left shoulder approximately an hour after the collision and later frontal headaches and a “funny feeling” in the occipital region. His examination revealed a full range of motion of the cervical spine accompanied by pain, a mild muscle spasm of the left side of the cervical musculature, minimal swelling of the fingers and of the left hand, and some pain on palpation in the supraspinous area of the left shoulder. An x-ray examination of the cervical spine made on August 12, 1963 revealed a reversal of the normal cervical lordotic curvature, apparently from muscle spasm. She did rather well on a regimen of conservative treatment consisting of the application of heat locally, muscle relaxants and mild analgesics. However, on August 20, 1963 she complained of pain in the right forearm and in the area of the right deltoid muscle posteriorly. At that time there was a full range of motion of the cervical spine in all directions and no evidence of muscle spasm of the cervical musculature. Neurological examination of both the right and left upper extremities was within normal limits. On some subsequent visits she stated she was doing fine except for pain along the course of the left mandible and along the left temporal area, which pain was relieved with muscle relaxants. On other visits she complained the pain was getting worse in the low cervical and upper thoracic spinous regions, with radiation into the right and left shoulders. Because of her subjective complaints she was treated subjectively. The conservative program of local heat, muscle relaxants and mild analgesics was^ continued. She also was given physical therapy in the form of cervical head halter traction and diathermy heat followed by massage to the cervical region. Although she appeared to do well on this treatment, she continued to complain of pain on the last office visit, October 18, 1963. Because she had not recovered fully following a triai of physical therapy, that treatment was discontinued. She was advised -to continue with the conservative treatment consisting of local heat, muscle relaxants, analgesics and the restriction of most activity. Dr. Kleinschmidt was of the opinion Mrs. Bar-ras had suffered an injury in the nature of a muscular or ligamentous strain of the cervical spine. He felt there would be no residual impairment as a result of the injury and was unable to make any positive physical findings which would account for her continued complaints of pain.
The report of Dr. Lyons is as follows: He saw Mrs. Barras on September 26, 1963, between six and seven weeks after the accident. At that time she was having pain in her left ear which this doctor diagnosed as a partial obstruction of the left eustachian tube. He noted a spasm of the neck muscle which could have been the cause of the ear problem. She was treated medically and instructed to continue her medicines for the neck spasm. *814 When seen again on October 3, 1963 the ear condition had cleared.
At the time of Dr. Haddad’s first examination on April 7, 1964 Mrs. Barras complained of pain in the left paravertebral area at the base of the neck on right and left lateral motion and on rotary motion. He found a marked tenderness in the area of the mid-portion of the trapezius muscle at the base of the neck on the left side. This physician was of the opinion she had sustained a cervical strain. He did not inject her with the medications he felt were proper because of the allergic reactions she told him she had suffered in the past. He felt she would benefit from continued intermittent head halter traction or supportive care with heat and analgesics as needed. He saw Mrs. Barras again on May 5, 1964 (the first day of trial was April IS, 1964; at the end of that day the matter was continued as an open case and Dr. Haddad’s report was received in evidence on a subsequent date) when x-rays were taken. The cervical spine appeared to be within normal limits. However, she continued to complain of pain in the left base of the neck in the mid-portion of the trapezius. He was of the opinion she would do better with supportive physical therapy such as intermittent halter traction, and probably injections of medication in the painful area. He delayed further therapy because she was then having other troubles not associated with the injury.
It is true Dr. Kleinschmidt could find no objective reason for Mrs. Barras’ complaints during some of his examinations, particularly on his last examination of October 18, 1963. But even on the date of that last examination he advised continued conservative treatment. As late as April 7 and May 5, 1964, Dr. Haddad found tenderness in the area concerning which Mrs. Barras complained and on May 5, 1964, nine months after the accident, he was of the opinion she needed further treatment. And Mrs. Barras had additional complications such as an inability to take the medicines as prescribed and the trouble with her ear. It is apparent the trial judge found the pain and suffering lasted much longer than would be expected of a mild cervical strain and he accepted Mrs. Barras’ testimony as to a continuance of that pain and suffering. We agree with his finding..
Under these circumstances, and after our examination of the cases relative to quantum cited by both counsel, we are of the opinion the award of $2,200 is not excessive to the extent that it constitutes an abuse of the “much discretion” vested in the trial court in assessing damages. Accordingly, we will not disturb that award. See Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Ballanga v. Hymel, 247 La. 934, 175 So.2d 274; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.