HALL, Judge.
Farrell C. Latour, plaintiff herein, received a whiplash type injury on December 18, 1967, when the automobile which he was driving was rear-ended by a vehicle owned by Auto-Trailer Sales and driven by Thomas F. Harmon. Plaintiff filed this direct action against New York Fidelity & Casualty Company (Fidelity & Casualty Company of New York) liability insurer of the offending automobile praying for recovery of damages for his injuries.
Liability having been stipulated in the District Court the case was tried on the question of quantum alone and resulted in a judgment in plaintiff’s favor in the amount of $2,732.50, being $2,500.00 for the bodily injury and $232.50 for the stipulated special damages, plus interest and costs.
Fidelity & Casualty Company of New York appealed contending that the award of damages for plaintiff’s bodily injuries is excessive and should be reduced to the sum of $750.00. Plaintiff neither appealed nor answered the appeal.
Following the accident plaintiff was examined and treated for his injuries by Dr. F. J. Padua. He was first seen by Dr. Padua on December 19, 1967. Examination by Dr. Padua on that date revealed some tenderness to palpation at the base of plaintiff’s skull and across the cervical musculature. There was some restriction of motion in this area and plaintiff complained of pain on rotation of the head. No other symptoms were displayed. All of the x-rays were negative for signs of fracture or any bony pathology. Dr. Padua’s diagnosis was a cervical sprain. Plaintiff was started on physiotherapy in the form of diathermy to the neck. He was given prescriptions for an analgesic and a muscle relaxant and told to avoid strenuous activity and to use moist heat treatment at home. He returned to Dr. Padua’s office for diathermy on December 20, 22 and 28, 1967 and January 17, 1968. Dr. Padua’s last examiñation which took place on January 17, 1968 revealed that the tenderness to palpation over the cervical musculature had disappeared and plaintiff no longer experienced pain on motion of the neck. Dr. Padua discharged him on January 17, 1968 “with no residual neck discomfort.”
On March 11, 1968 plaintiff consulted Dr. J. Kenneth Saer. He told Dr. Saer of his accident and subsequent treatment and discharge by Dr. Padua, but complained that he still had a feeling of fatigue at the end of the day and a stiffness in his neck off and on. He also complained that turning quickly produced soreness in the back of his neck but stated that there was *696 no radiation of pain into the upper extremities. Dr. Saer’s examination revealed a full range of motion of the cervical spine and no acute tenderness over the cervical spine or interspinous spaces, but there was a mild tenderness over the tra-pezious muscles. Dr. Saer reported that plaintiff complained of pain and soreness in the back of the neck at the extremes of hyperextension and left turning. X-rays were negative. It was Dr. Saer’s impression that plaintiff had sustained a soft tissue strain or sprain of the cervical spine and was still having mild symptoms generally associated with turning quickly or with fatigue. Dr. Saer stated in his report[1]: “I do not see any signs of serious injury upon examination at this time. It is likely that with additional time the symptoms which I think he now has will gradually subside. It is possible he may continue to have mild aching or discomfort with fatigue in the future * * * No medical treatment is necessary at this time.”
At the trial of the case which took place on September 16, 1968, nine months after the accident, plaintiff testified he still experienced stiffness and “mild pain” if he made “a real sharp turn” to the left or to the right. He stated that if he did this his soreness and stiffness would last the rest of the day. He also testified that if he worked late and was “really tired” his neck would start to nag him like a dull headache but this would disappear with sleep. He admitted that he has received no treatment and has taken no medication for these complaints since his discharge by Dr. Padua on January 17, 1968.
What we are faced with here is a very mild cervical sprain which did not incapacitate plaintiff, which did not cause him to be hospitalized and for which plaintiff received only one month’s treatment.
We are mindful that in the assessment of damages in cases of offenses and quasi offenses “much discretion must be left to the judge or jury” and that the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the lower court. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127. However after a review of the facts in this case we have come to the conclusion that a substantial miscarriage of justice will result if the award of the trial court is allowed to stand.
We are of the opinion that an award of $2,500.00 for plaintiff’s injuries in this case is excessive and that this award should be reduced to the sum of $1,500.00.
Although each case must stand on its on facts with no definite rule being applicable for the measurement of quantum we are of the opinion that some degree of uniformity is desirable in the assessment of damages. For this reason we cite the following cases: Merriell v. Collins, La.App., 218 So.2d 632; Lotz v. Jamerson Hardware Store, La.App., 211 So.2d 391; Cox v. Travelers Indemnity Co., La.App., 201 So.2d 528; Bryant v. Great American Insurance Company, La.App., 191 So.2d 785.
For the foregoing reasons the judgment appealed from is amended by reducing the award in plaintiff’s favor from the sum of $2,732.50 to the sum of $1,732.50, and as so amended and in all other respects the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellee.
Amended and affirmed.

. Neither he nor Dr. Padua testified. Their written reports were admitted and filed in evidence without objection.