HOOD, Judge.
Plaintiff, Harry C. Tubbs, instituted this suit for damages for personal injuries sustained by him as the result of an automobile collision. The defendant is Allstate Insurance Company. Judgment was rendered by the trial court in favor of plaintiff, awarding him $7,000.00 as general damages and $1,196.50 as special damages. Defendant has appealed.
The defendant admits liability and plaintiff has not answered the appeal. The sole issue presented here, therefore, is whether the amount awarded to plaintiff as damages is excessive.
The accident occurred on September 5, 1968, on a city street in Lake Charles. Tubbs, a Lake Charles City Policeman, was riding on the right front seat of a city patrol car when it collided with an automobile being driven by Mrs. Mae Brittain, the defendant’s insured. The impact caused plaintiff to be thrown forward in the car and to strike his face against the dashboard. As a result of the accident, plaintiff sustained injuries to his neck and to five of his teeth.
Immediately after the accident occurred Tubbs was taken to a hospital where x-rays were made. The next day he was examined by Dr. Boyd M. Woodard, a general practitioner, who diagnosed his injuries as “a contusion of the forehead and a mild whiplash type injury, at the time of the neck and upper back area.”
Plaintiff was treated by Dr. William J. Streete, a surgeon, on September 10, September 14 and on December 3, 1968. On the first examination the doctor found spasm of the erector spinae muscle groups in the neck and in the lumbosacral area. He concluded that plaintiff had “spasm of the neck muscles and acute lumbosacral strain.” He prescribed analgesics and a muscle relaxant. The second visit to the doctor, made on September 14, was for treatment of an infection which was not related to the accident. On the third visit, plaintiff still complained of pain and Dr. Streete prescribed physical therapy treatments.
Dr. Norman P. Morin, an orthopedic surgeon, examined Tubbs on November 12, 1968, and on May 14, 1969. He found muscle spasm in plaintiff’s neck and shoulders on the first examination, and he stated that his findings “were in keeping with the residuals of a mild cervical myofascial strain sustained approximately two months prior to my examination.” He prescribed physical therapy for a period of three or four weeks, and he suggested that plaintiff be reexamined following that treatment. Tubbs took only one week of physical therapy, and he did not return to Dr. Morin until about six months later, on May 14, 1969, at which time the doctor found that he still had mild muscle spasm and that the range of motion in his neck continued to be somewhat limited. Dr. Morin expressed the opinion that plaintiff’s symptoms “may go on for at least another six months from the time I saw him.”
Tubbs was 21 years of age when the accident occurred. He was not hospitalized and he did not lose any of his wages because of his injuries, although he was not able to work for three days. He testified that he suffered pain in his neck for about a year after the accident occurred, but that by the time of the trial which took place on January 2, 1970, he had fully recovered from his neck injury and that he then could do everything he had been able to do before the accident.
The evidence convinces us that plaintiff sustained a mild cervical strain as a result *397 of the accident, that he suffered pain from that injury for a period of about twelve or fourteen months after the accident occurred, and that he had fully recovered from this neck injury by the time of the trial which took place about sixteen months after the accident.
In addition to the above mentioned cervical strain, Tubbs aslo sustained injuries to five of his teeth as a result of the accident, these injuries consisting of fractures of three of his upper teeth and fractures of two of his lower molar teeth. He was treated by Dr. Richard J. Bono, a dentist, from September 10, 1968, until April 23, 1969. Dr. Bono found that in addition to “fractures throughout the teeth,” there also was nerve damage to the upper right lateral and the upper left central teeth. He thereupon performed a procedure called endodontics on those two teeth, which involved the removal of the nerve in each tooth, the placing of a metal pin in the nerve root canal, and then crowning or capping that tooth. Actually, all five of the fractured teeth were crowned, three upper ones being crowned with porcelain and the two lower ones with gold. Dr. Bono did not consider it necessary, however, to remove the nerves from the two lower teeth or from one of the upper teeth before crowning them.
The dentist explained that “any time you crown a tooth there is a possibility that the tooth may become non-vital or die.” And, he stated that if that occurs in any of the three teeth which were capped without first removing the nerve, it would become necessary then either to attempt to perform an endodontics procedure on that tooth or to extract it and put in a bridge.
Dr. Bono testified that the dental work which he performed on plaintiff, and particularly the removal of the nerves from two teeth, was painful. He felt, however, that the procedure was successful, and that plaintiff is better off in having crowned or capped teeth than he would have been if it had been necessary to extract those teeth. Tubbs testified that he was still having trouble with his teeth at the time of the trial, which took place about sixteen months after the accident. His trouble, he explained, is that his teeth now are very sensitive to hot and cold foods or liquids, he has had problems in cleaning them, his teeth do not meet properly and he has an overbite.
No question has been raised as to the special damages which were awarded to plaintiff, all of which consisted of medical expenses. Defendant contends, however, that the award of $7,000.00 as general damages for the injuries which Tubbs sustained is excessive and should be reduced.
Defendant has referred us to a number of cases in which the awards of general damages for similar injuries appear to be substantially lower than the amount awarded here. Plaintiff, on the other hand, has cited cases which indicate that higher awards have been made for similar injuries. We have reviewed all of these cases carefully, but have decided that no useful purpose would be served by citing or discussing them here.
Much discretion is vested in the trial judge in determining the amount which should be awarded to an injured claimant as general damages. Awards made in other similar cases may and should be considered, however, to determine whether the amount allowed in a particular case is “all out of proportion with previous awards made for somewhat similar injuries,” and thus whether the trial judge has abused the discretion which is vested in him. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964).
Our conclusion, after reviewing the facts of this case and the awards made in similar cases, is that the amount allowed plaintiff as general damages here is within the range of discretion which is vested in *398 the trial court. We thus affirm the judgment of the district court.
For the reasons herein set out, the judgment appealed' from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.