HEARD, Judge.
This is a suit by Lewis Fred Raley individually and as natural tutor of his minor son, Lewis Fred Raley, Jr., against Donald Callahan, Donald L. Callahan, Jr., and Liberty Mutual Insurance Company, for expenses, and for damages for personal injuries received by Lewis Fred Raley, Jr., by reason of an automobile collision which occurred in Shreveport on December 11, 1967.
■ The evidence established that Lewis Fred Raley, Jr., was riding as a guest passenger in a panel van owned by the Bossier Vending Company, Inc., and driven by Stanley B. McCrerry. Traveling west on East Kings Highway they approached the intersection of Alexander and East Kings Highway when the traffic control light changed to red for westbound traffic. The panel van came to a stop and was struck from the rear by a 1957 Chevrolet owned by Donald L. Callahan and being driven by Donald L. Callahan, Jr. The impact knocked the panel van forward into a Chrysler automobile driven by Kinch J. Richards which car was stopped in obedience to the red traffic signal. From a judgment awarding Lewis Fred Raley, Jr., the sum of $12,500 defendants have appealed.
Plaintiffs answered the appeal praying that the judgment be amended to award Lewis Fred Raley, Jr., the sum of $100,000. Liability was admitted by defendants; therefore, the only issue involved in this case is one of quantum.
Young Raley testified that when the panel van was struck from behind the impact threw him forward into a supporting post in the van, and then when the *379 van hit the Chrysler in front of him he was thrown backwards. He was not rendered unconscious, but was assisted from the van and saw blood on his hand, felt nauseous, had a throbbing headache and a lump or swelling on his head. He was taken to Doctors’ Hospital to see Dr. Landry; however the doctor was not there; he then went to the Bossier General Hospital where he received some stitches and treatment.
On January 22, 1968 young Raley was seen by Dr. B. I. Rambach who stated that he was complaining of pain in the lower part of his back and gave him a history of the accident. The doctor’s examination was restricted to the back and extremities and made pertinent findings of tenderness in the middle position and both sides of the middle position of the lower back region. The doctor stated that the patient sustained a muscular liga-mentous strain of the lumbosacral spine region. He saw the patient again on February 16, 1968 at which time he found moderate tenderness to palpation in the middle portion of the lower back region with residual pain and discomfort. Dr. Ray King, Dr. Rambach’s partner, saw the patient on June 18, 1968 and concluded he had a mild lumbar strain and prescribed muscle relaxants stating further there were no findings of any intervertebral disc injury. On July 19, 1968 Dr. Rambach saw the patient and found tenderness palpable to the middle of the lumbosacral spine along the interspineous ligaments. Dr. Rambach testified he had no record of referring Raley to Dr. James H. Shipp, a neurologist; however, Dr. Shipp stated Raley was referred to him by Dr. Rambach on March 26, 1968, at which time he complained chiefly of headaches, low back pain and nervousness. Dr. Shipp made a general physical and neurological examination and found that the pupil of the left eye was slightly larger than the pupil of the right eye in that ligh reflex in the left eye did not construct it as it did the one on the right. The doctor further stated that Raley was wearing a back brace and was under treatment by Dr. Ram-bach. Dr. Shipp was concerned at the time that his eye might represent a head injury, either a severe concussion or contusion of the brain or possibly a minor subdural hematoma. An electroencephalograph test was made on April 2, 1968 which showed a minimal to mild abnormality which on a scale of 1 to 5 the doctor graded somewhere between 1 and 2. Such an abnormality might produce a minor seizure or blackout. The doctor saw the patient on April 2, April 9, and May 15, 1968. On "IVTay 15 Raley complained of headaches and anxiety; on August 1, 1968 he complained of headaches and seemed to be having some degree of relapse. On November 12, 1968 the doctor stated the patient had advised him that he had had a blackout the week before. On February 12, 1969 he was continued on medication and on July 31, 1969 plaintiff reported that he had continuous headaches which were described as moderately severe. The doctor noticed no difference at that time in the pupils of his eyes and no difference in the light reflexion. On October 9, 1969 plaintiff reported he had had a blackout the day before and a second electroencephalograph test showed an abnormality clearly compatible with a form of convulsive disorder. The doctor thought his loss of consciousness might have been a seizure and concluded Raley received a head injury which he classified either as a severe concussion or somewhere between a concussion and contusion due to the persistence abnormality of brain wave study, persistence of other symptoms and some degree of change in the make-up of his personality. The last time Raley saw Dr. Shipp was April 16, 1970 when the doctor reported he was continuing to experience much headache and these headaches were a manifestation of injury.
Dr. Heinz K. Faludi, a neurosurgeon, saw Raley on March 28, 1969 and stated that he complained of pain across his lower back and frequent headaches over *380 the forehead. A general physical and neurological examination was made, Dr. Faludi stating that the swelling and discoloration had subsided in the patient’s head but there was residual tenderness and residual lumbosacral sprain. He saw Raley again on February 26, 1970 when the patient said he continued to have severe low back pain and constant pain on lifting a heavy object. He also complained of severe headache and the doctor testified he did not believe Raley was attempting to exaggerate. No other evidence was introduced either by plaintiffs or defendants to the effect that Raley’s injury was less severe than those testified to by the doctors.
Defendants contend that the trial court based its award on speculation, conjecture, possibilities and unsupported probabilities of injury. In our opinion plaintiff’s injuries were amply supported by the medical testimony.
Defendants’ counsel argue that the award of the trial court is grossly excessive. In Reeder v. Allstate Insurance Company, La.App., 235 So.2d 111, the court stated:
“ * * * The size of an award, per se, does not require reduction nor does its relationship to awards in cases of a roughly similar nature. Gaspard v. Le-Maire, 245 La. 239, 158 So.2d 149 (1963), makes it plain that each award must stand on the facts of each case, that is, upon a legally feasible relationship between the award and the evidence which supports it. The abuse of this relationship, not the abuse of prior cases, constitutes legal excess.” [235 So.2d 111, 113]
A review of the record convinces us that the award of the trial court is correct and is hereby affirmed. The demands of plaintiff for an increase in quantum is denied.
Costs are assessed to defendants.