HOOD, Judge.
Bobby G. Dykes and his wife, Evelyn W. Dykes, instituted this suit for damages for personal injuries sustained by them when the automobile in which they were riding was struck in the rear by a car being driven by Edward J. McCabe. The defendants are McCabe and his insurer, State Farm Mutual Automobile Insurance Company. Judgment was rendered by the trial court in favor of plaintiffs, awarding Mr. Dykes $1,989.80, and Mrs. Dykes $1,000.00. Plaintiffs have appealed.
The issues presented are whether the awards of general damages made to plaintiffs should be increased, and whether plaintiffs are entitled to recover additional sums for loss of wages.
The accident occurred at about 1:00 P. M. on December 27, 1968, on a heavily traveled highway near Pineville, Louisiana. Mrs. Dykes was riding in the right front seat of an automobile which was owned and being driven by her husband. The Dykes’ vehicle stopped for a traffic light, and while waiting for the light, it was struck in the rear by an automobile being driven by defendant McCabe. As a result of that collision, both vehicles received minor damages, and plaintiffs sustained personal injuries. Plaintiffs’ minor son, a rear seat passenger in their car when the accident occurred, was not injured.
Plaintiffs were then residents of Colorado. They did not seek or obtain medical attention immediately after the cars collided, but instead they continued on their trip by automobile to the home of Mrs. Dykes’ parents in Shreveport, Louisiana. After their arrival, they drove to a Shreveport hospital where, some eight hours after the accident occurred, they were examined by Dr. Baer I. Ramback, an orthopaedic surgeon.
Dr. Ramback felt that plaintiffs had sustained relatively minor injuries as a result of the accident, and he prescribed for each of them muscle relaxants, a mild analgesic to relieve pain and the application of moist heat to the neck. Neither of the plaintiffs was hospitalized. Three days later, on December 30, plaintiffs left Shreveport and drove back to Colorado in their automobile. They returned to their respective employments on January 2, 1969. Mr. Dykes was employed at that time as an automobile salesman and as a part-time minister of the United Pentacostal Church. Mrs. Dykes was employed as a secretary in a business establishment in Colorado, and she also played the piano and an accordian at church services conducted by her husband.
*605 Mr. Dykes quit his job as a car salesman late in January, 1969, and he obtained employment as an insurance salesman. He left that job about one month later, however, because he found that “it was completely different from selling automobiles,” and that he could not make any money at that occupation.
Mrs. Dykes quit her employment as a secretary in March, 1969. She and her husband returned to Shreveport, Louisiana, in April, 1969, and they lived with Mrs. Dykes’ parents for a month or two. In May or June of that year, they became full-time traveling evangelists, and as such, they traveled into various parts of the United States conducting revival services. Both testified that from that time until the date of the trial in September, 1970, Mr. Dykes preached revival sermons on an average of five nights per week, and that on each of those occasions Mrs. Dykes played the piano and an accordion. Their travels apparently took them all over the United States, including such places as North Carolina, Montana, Utah, California, Indiana and Oregon. They traveled by automobile.
Neither of the plaintiffs consulted a physician about the injuries which they allegedly received as a result of this accident from the time they were examined by Dr. Ramback on the day of the accident until two months later, on February 27, 1969, when they went to their family physician, Dr. Ashley N. Grosboll, a general practitioner, of Loveland, Colorado. They were treated by Dr. Grosboll for a period of time thereafter, and they also were examined by other physicians after that date. The record contains the depositions of the two treating physicians, Dr. Ramback and Dr. Grosboll, and of three other examining doctors.
Although Mr. and Mrs. Dykes did not seek medical treatment for their injuries between the date of the accident and February 27, 1969, we attach some significance to the fact that Mr. Dykes telephoned his family doctor, Dr. Grosboll, on February 10 requesting a prescription or treatment for an unrelated ailment, and yet he did not mention or seek treatment for the injuries which he asserts was then causing him much pain and disability.

Injuries Sustained by Bobby G. Dykes

Mr. Dykes was 30 years of age when the accident occurred. He testified that he experienced a headache and a pain in the middle of his back immediately after the cars collided, that since that date he has continued to suffer pain in his neck and back, and that he has had high blood pressure and has been extremely nervous and irritable since the accident. He stated that his pain and nervousness has been such that he was compelled to discontinue selling cars about one month after the accident, and that he has been unable to return to that occupation. He explained that the reason why he and his wife did not seek medical treatment until two months after the accident was that Dr. Ramback had told them that their injuries would just have to work themselves out over a period of time.
On the day of the accident, Dr. Ramback concluded that Mr. Dykes had sustained a “mild ligamentous strain” of the muscles of the neck and upper back, and a slight “myoligamentous strain” in the lumbar spine area. He examined Mr. Dykes again on April 8, 1969. That examination was essentially negative as to abnormalities, but he still classified the strains as being moderate in the cervical and dorsal spines, and slight to moderate in the lumbosacral spine. He did not feel that his condition was disabling.
Dr. Grosboll examined Mr. Dykes for the injuries sustained in the above mentioned accident on February 27, 1969, and he treated him throughout the month of March, and again on May 28 and on December 26, 1969. He concluded that Mr. Dykes had sustained a “severe myospasm, antrascapular, secondary to whiplash,” hypertension and elevated blood pressure, all *606 as a result of the accident, and that Dykes was disabled during the entire ten month period that he observed him.
Dr. Heinz K. Faludi, a neurosurgeon, examined Mr. Dykes on February 5, 1970, and concluded that he had suffered a cervical and thoracic muscular sprain as a result of the accident, and that he had not responded very well to treatment because of a neurotic attitude toward the injury. The doctor stated that he felt that Dykes’ attitude bordered “on the pathological,” and that he probably was in need of psychiatric care. He found Dykes’ blood pressure to be “slightly elevated,” but we interpret his conclusion to be that the increase in blood pressure was not related to the accident. He did not feel that Dykes was incapacitated from work.
Dr. R. Fred Marceau, a psychiatrist, interviewed Mr. Dykes on August 14, and again on August 17, 1970. He found Dykes’ blood pressure to be normal, but concluded that he had sustained a post traumatic type anxiety neurosis which came on after the accident. He felt that Dykes was disabled from returning to work as a car salesman, but that he probably would be able to return to that type work within two or three months after the examination, with proper psychiatric care.
The trial judge did not accept Mr. Dykes’ testimony as to the extent of his injuries. In his reasons for judgment the court stated:
“The Court will state at the outset that it is not as impressed with the seriousness of the injuries sustained by these two parties as they tried to make believe that their injuries were. Also the record clearly reflects that these parties took innocent situations and happenings and gave different reasons for the happenings than the actual true reasons.
“This man claims that he is so seriously injured that he cannot do any kind of work except preach. This man has since this accident gone all over the United States preaching and speaking. I could not think of anything more strenuous on a person that has a cervical strain than driving an automobile all over the United States and carrying on a Pentacostal revival.”
Dykes was awarded $1,000.00 for pain and suffering resulting from the accident. He contends that this is inadequate and should be substantially increased.
The trial judge is vested with “much discretion” in determining the amount which should be awarded as general damages, and an award of such damages made by the trial court will not be disturbed unless it is found to be manifestly excessive or manifestly insufficient under all of the circumstances. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). In this instance, we cannot say that the award made to Mr. Dykes as general damages was manifestly insufficient. We thus affirm that award.

Injuries Sustained by Mrs. Evelyn W. Dykes

Mrs. Dykes was 26 or 27 years of age at the time of the accident. She testified that she experienced pain in her neck and between her shoulder blades immediately after the accident occurred, and that she has continued to suffer pain in her neck, back and shoulders since that time. She stated that in February, 1969, her vision began to blur, and she began to experience numbness in her tongue, in the left side of her face and in her left arm and leg. She quit her secretarial job in March, stating that Dr. Grosboll had recommended that she do so because of these injuries. At the time of the trial, almost two years after the accident, she still complained of headaches and of pain in her neck and back, and she stated that she still was unable to use a typewriter for more than a few minutes without experiencing pain.
The examination made by Dr. Ramback on the date of the accident was essentially *607 negative as to injury, except for Mrs. Dykes’ complaints of pain. He diagnosed her injury, however, as a “minimal to moderate” cervical strain, and he stated that he “would not have classified it as anything marked.” He examined her again on April 8, 1969, and at that time he felt that she was still suffering from the same injuries and a “slight low back strain.” He felt that Mrs. Dykes would he fully recovered from her injuries within twelve months after the accident.
Dr. Grosboll treated Mrs. Dykes for about the same period of time that he treated her husband. He concluded that she had suffered a moderately severe cervical strain and an anxiety reaction, both of which directly resulted from the accident. On March 28, 1969, Mrs. Dykes informed the doctor that she was moving back to Louisiana, and he then advised her to not work there temporarily because of nerves and muscle spasms.
Dr. W. J. Hill, Jr., a general practitioner, examined Mrs. Dykes on April 14, 1969, and on four other occasions within a period of about a month thereafter. He diagnosed her injuries as a “moderate sprain of the muscles and ligaments of the cervical, thoracic and dorsal spine and shoulder girdle area, more marked on the left side.” He considered to be valid her complaints that she was unable to play an organ or the piano, but he felt that she could possibly continue her secretarial work.
Dr. Faludi examined Mrs. Dykes on February 5, 1970, and concluded that she had suffered a “moderate cervical and thoracic sprain with irritation to the major occipital nerves on both sides.” He indicated that psychiatric assistance might be needed for her as well as for her husband.
The trial judge rejected much of Mrs. Dykes’ testimony as to the extent of her injuries. In his reasons for judgment he stated, “The testimony given by the plaintiff’s wife is not any more acceptable than that given by him.” He awarded Mrs. Dykes $1,000.00 for the pain and suffering. We cannot say that the trial judge erred in rejecting parts of Mrs. Dykes’ testimony, or that he abused his discretion in fixing the amount of the award of general damages at that amount. We have concluded that the award should not be disturbed.

Loss of Wages

The trial judge awarded Mr. Dykes $989.80 as special damages, consisting entirely of medical expenses, but he made no award for loss of income by either of the plaintiffs, or for the decrease in their earning capacity. The court obviously felt that neither of the plaintiffs was disabled from performing the duties of their respective employments, and that they did not quit their jobs because of any injuries or disability which they may have received in the above described automobile accident.
The income tax returns of Mr. and Mrs. Dykes for the years 1968 and 1969 were introduced into evidence, and these returns show that they earned $4,303.29 more in 1968 than they did in 1969. Plaintiffs argue that under those circumstances they should be awarded at least two years of lost income, or the sum of $8,606.58.
We are not convinced that the decrease in plaintiffs’ earnings in 1969 was brought about by the accident which occurred on December 27, 1968, or by the injuries which plaintiffs sustained in that accident. Actually, Mr. and Mrs. Dykes returned to their former employment within a few days after the accident occurred, and for two months thereafter they did not seek medical treatment for their injuries.
The trial judge found that Mr. Dykes quit selling automobiles and insurance solely to enable him to devote more time to his evangelistic work and to the selling of sewing machines, and not because of his injuries. That conclusion is supported by statements made by Dykes and by the fact that Dykes quit his job selling cars before he was examined by a doctor. His new occupation did not produce as much income as did his former occupation of selling au *608 tomobiles, and that, rather than his injuries, accounts for the reduction in his income. We think Mrs. Dykes discontinued her secretarial work in order to accompany her husband back to Louisiana and to assist him in his evangelistic work. For these reasons, we cannot say that the trial court erred in rejecting plaintiffs’ demands for judgment for loss of wages.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.