BOUTALL, Judge.
This litigation arises from an accident which occurred on May 18, 1966, while plaintiff, Mrs. Helen Cole, was riding as a passenger in a vehicle operated by her husband, Mr. John A. Cole. The Cole vehicle was struck by a New Orleans Public Service, Inc., street car at the auxiliary turn on St. Charles Avenue just on the uptown side of General Pershing Street.
It is unnecessary for the purposes of this appeal to enter into a discussion of the procedural aspects of this case and the relations of the parties herein. Suffice it to say that a trial by jury was had and the jury, among other verdicts, returned a verdict in favor of plaintiff, Mrs. Helen Cole, against defendants, New Orleans Public Service, Inc. and Norman G. Sekinger, in the amount of $10,500.00 for personal injuries she sustained in the accident. From this adverse judgment, New Orleans Public Service, Inc. and Norman G. Sekinger appeal suspensively contesting only the amount of the award, which they contend is excessive.
We shall first direct our inquiry into the extent of injury suffered.
Plaintiff in her petition alleges her injuries to be severe, painful and permanent injuries to both mind and body, itemized as: acute traumatic lateral epicondylitis of the right elbow, acute cervical sprain, rupture of the triceps muscle of the arm, pain in the lumbosacral area of her spine, and mental anguish. She pleads, in the alternative, aggravation of existing conditions.
An examination of the trial record reveals that on May 19, 1966, the day after the accident, plaintiff consulted Dr. Herman Rabin, a general surgeon (then associated with the Fisher Rabin Medical Center and so associated until June 1, 1969), as a result of injuries she received. Dr. Rabin did not testify at the trial due to illness, but instead his deposition was taken and entered in evidence. Dr. Rabin diagnosed plaintiff’s injuries as “an acute traumatic lateral epicondylitis of the right elbow which is manifested by tenderness over the lateral epicondyle and also pain on gripping and extension of the forearm”. *50 Dr. Rabin also testified that plaintiff had an acute cervical sprain with tenderness over the area of her neck and with some areatus spasm, and was unable to carry-through a full range of motion. It was this physician’s opinion that conservative treatment could best relieve plaintiff’s pain. This treatment, which encompassed fifty-eight (58) office visits, consisted of ultrasound therapy to the neck and right elbow, diathermy and periodic injections of cortisone or a cortisone derivative. Dr. Rabin’s intensive care of plaintiff commenced with almost daily treatment for some two months. As the objective symptoms of muscle spasm in the neck began to subside treatment in that area was reduced.
During this period of treatment, on October 13th, plaintiff complained of pain in the lumbosacral area. Dr. Rabin testified that he found no objective symptomatology in the neck and back but felt that the pain complained of was subjective and such pain could certainly exist without objective findings. However, he did not feel this was caused by the accident.
Dr. Rabin further indicated that plaintiff first complained of pain in the triceps muscle on July 11, 1966. This pain was diagnosed as a partial rupture of the triceps muscle. This aspect of his diagnosis troubled Dr. Rabin because he felt that it had been present for some time because the acute symptoms had subsided by July 11, 1966. Dr. Rabin was of the opinion that this rupture would be “difficult to relate to the accident in view of the fact that there should have been symptoms referable to this area previous to [plaintiff] calling [his] attention to the same”. Defendants contend that this partial rupture was not related to the accident. However, Dr. Rabin questioned his own diagnosis relative to the partial rupture and felt that the accident could have caused the condition. Reference to Dr. Rabin’s testimony reflects this fact:
“ * * * although there is a possibility that she could have ruptured a few muscle fibers at the time of the original accident and then gradually formed some scar tissue which formed the indentation, but I interpreted it as a partial rupture. Remember, I did not say this was a complete rupture of the muscle where the muscle completely separated. There was just an indentation in the muscle which would designate to me that there was a partial rupture and some atrophy. * $ *»
In view of the long and intensive treatment of Mrs. Cole, Dr. Rabin concluded that she was suffering from a permanent, chronic disability to her elbow because the injury failed to respond to the conservative treatment and continued to flare up. He found that she had definite hypertrophy over the lateral epicondyle which could not be improved except through the possibility of an operation. He felt that he could not recommend such an operation but referred her to an orthopedic surgeon, Dr. Hyman Soboloff, for consultation. Dr. Rabin clearly testified that Mrs. Cole would continue to suffer pain in her arm permanently whenever she engaged in activity which involved grasping with her hand or extending of her elbow.
Dr. Soboloff, an orthopedic surgeon, saw Mrs. Cole on February 3, 1967, in consultation with Dr. Rabin. He found definite irritation of the radial humeral joint and restriction of motion. He suggested that she continue the conservative treatment for several additional weeks and, that, if the condition persisted, an operation might be indicated. He testified that the operation does not necessarily guarantee a cure, but generally helps considerably and in her case there was a 50-50 chance of reducing the pain to a minimum.
However, Mrs. Cole improved under the suggested treatment and the operation was never recommended. When Dr. Soboloff examined her again on November 8, 1968, he found that her condition, while improved, had now become permanent and an operation would do little good. She will *51 continue to have chronic complaints of pain for the rest of her life.
Dr. Kenneth Saer, an orthopedic surgeon, examined Mrs. Cole on behalf of the defendants. He concluded that she had the condition the other doctors testified to, although he believed it to be much milder. However, he offered no recommendation for surgical procedure.
Defendants contend that Mrs. Cole could have reduced her disability by undergoing an operation on her elbow. However, as pointed out above, there is nothing in the record to show that the doctors who examined her believed that she should have been operated on. She relied on the course of treatment suggested by the doctors and there is no way she can turn back the clock to have another chance. She must continue to endure the pain which is certain to recur periodically through use of her arm.
Defendants presented this same argument to the jury on the trial below, and the trial judge charged the jury on the law pertaining to minimizing plaintiff’s disability through an operation. They do not complain here that the charge was improper or insufficient, simply that the verdict was excessive. Certainly the jury considered their contention, and, in view of the doctors’ testimony, including defendants’ own expert, properly rejected ft.
We find ample evidence to support the verdict of the jury and do not consider that the amount of the award is excessive. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
The judgment appealed from is affirmed. Costs are assessed against appellant.
Affirmed.