SCHOTT, Judge,
concurring.
Defendants-appellants argue persuasively in their brief to this court as follows:
“This appeal is taken by the defendants with full recognition and appreciation of the workload of this Court, but with a concomitant feeling of duty and obligation to illustrate to this Court what is happening almost daily in the trial courts with respect to claims such as have been made here. If something constructive could be done about discouraging the procedures that are present in the instant case, in the plaintiffs’ preparation of their claims, it could go a long way to reducing the workload of all the Courts. We say this because what has become ‘standard operating procedure’ in the presentation of plaintiff’s claims on soft tissue injuries, is underlined and multiplied by five in the instant case. There are five plaintiffs. They are all represented by the same counsel. They all went to the same doctor. Within $10, they all incurred the same medical bills. They all began treatment on the same day. They were all discharged on the same date. It should stretch the imagination of any reasonable person that such coincidence could be present.”
Considering these facts which are borne out by the record, a reversal of the trial court’s judgment or a substantial reduction of quantum would seem to be in order except for the standards for appellate review imposed upon us by the Supreme Court in Canter v. Koehring Company, 283 So.2d 716 (1973).
There it was said that reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. It may be argued in this case that to award these five plaintiffs the same $2,000 each under the circumstances constituted an unreasonable evaluation of their credibility, but that approach seems to lack merit when we consider the Supreme Court’s stated reasons for the rule:
*593 “The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
Applying these principles to this case, it is true that we can only read what these five witnesses told the trial judge, and without a doubt when this testimony is reduced to writing it is unbelievable. But as live witnesses they must have been quite persuasive because the trial court saw fit after observing them to reward them generously for their performance. In the final analysis, it is impossible for us to say that his evaluation of their credibility was not reasonable because we did not see the performance. It is analogous to the dramatic effect on an audience by the performance of a powerful orator. The audience may be moved to tears or passion but when this is reduced to print it may not have the same effect. Perhaps if we had a videotape of plaintiffs testifying we could say that the trial judge’s evaluation of their credibility was not reasonable, but in the absence of such a tool we are at a disadvantage. Following the Supreme Court’s mandate in the Canter case we cannot substitute our own evaluation of these plaintiffs’ credibility. When these plaintiffs climbed on the witness stand and each said, “I am hurting,” who is to say that they were not hurting? We can say that we don’t believe they were hurting, but the trial judge by awarding these plaintiffs $2,000 each said, “I believe they are hurting.” In the final analysis their awards are supported exclusively by his belief of their testimony. Objective pain is not always subject to confirmation or contradiction by physical evidence, so that, in a sense, the final decision as to whether plaintiffs were hurting or not before, during and after their course of treatment was for the trial judge alone to decide.
I also concur with Judge Gulotta to the effect that $300 would be adequate for each of these plaintiffs but I do not believe a reduction is supportable under the prevailing jurisprudence of the Supreme Court.
Under the Louisiana Constitution of 1974 appellate jurisdiction of a Court of Appeal extends to facts as well as law, Art. 5, § 10(B). In two recent cases, Robinson v. Graves, 332 So.2d 303 (La.App.4th Cir. 1976) and Coco v. Winston Industries, 330 So.2d 649 (La.App.3rd Cir. 1976), careful reviews of the facts presented at the trial were made by the appellate courts and reductions in the quantum of the awards were made. In both cases, the Supreme Court reversed the courts of appeal and reinstated the judgments of the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (1977), Robinson v. Graves, 343 So.2d 147 (La.1977). The primary basis for the Supreme Court’s action in both cases was that abuse of the “much discretion” in making awards for general damages afforded to the trial court by LSA-C.C. 1934(3) was not demonstrated by the record. In these cases, the Supreme Court restated and reaffirmed principles repeatedly announced since the Court’s decision in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). See cases cited in the Supreme Court’s decision in Coco v. Winston Industries, Inc., supra.
One definition of the word “discretion” is the “Power or privilege of the court to act unhampered by legal rule.” Black’s Law Dictionary revised 4th ed. 1968. Another is “Freedom to act or judge on one’s own.” The American Heritage Dictionary of the English Language, 1969. One definition of the word “abuse” is “to make an extravagant or excessive use, as to abuse one’s authority.” Black’s Law Dictionary, revised 4th ed. Another is “to use wrongly or improperly.” The American Heritage Dictionary of the English Language, 1969. Thus, when we speak of abuse of discretion we are in a sense using a phrase which is inherently self contradictory. If a trial court’s discretion under C.C. Art. 1934 means that he can set awards for general damages “unhampered,” how can it ever be said that he has made extravagant or excessive use of that discretion. If it means that *594 he is free to make awards on his own, how can it be said that he has misused his authority even though everyone else considers the award he made to be excessive. Furthermore, under the definitions given for discretion it would seem that the use of the word “much” preceding “discretion” in Art. 1934 is a redundancy. If the trial judge is to act unhampered and if he has the freedom to act on his own in making general damage awards these expressions are absolute, and the word “much” does no more than emphasize what is said by the word “discretion.”
Recent decisions of the Supreme Court seem to indicate that as a matter of law the “much discretion” afforded by Art. 1934 means that the trial judge has freedom to act on his own practically unhampered by the appellate court’s constitutional obligation to review the facts. While the Supreme Court opinions continue to state that appellate courts should reduce awards where there is an abuse of this “much discretion,” in practice the case is indeed rare where this appellate judicial authority has any application. This is demonstrated by the fact that the Supreme Court has seldom increased or decreased the quantum awarded by the trial court in recent years and has repeatedly granted writs of review to reinstate trial court awards where the courts of appeal have changed such awards. The fact that the Supreme Court has refused writs of review where changes have been made by the appellate courts is apparently of no significance whatsoever. See the Supreme Court’s discussion in Coco v. Winston Industries, Inc., supra, and compare with the coiirt of appeal opinion in the same case in which 19 writ denials are cited and discussed.
If each of the five plaintiffs in this case had filed separate suits and had recovered the same $2,000 appellants’ argument for a reduction would not be nearly as persuasive. Had the trial court attempted to make some distinction among them based on their appearance or age perhaps he could have awarded some amounts which varied by $100 or so. But, in the exercise of his “much discretion” he gave them the same amounts. Can it be said that this constituted an abuse of that discretion? Under the Supreme Court’s decisions I cannot say that it was.
In connection with appellants’ statement concerning the workload of this court, we do not hesitate to undertake the performance of our duty in connection with any individual case regardless of any backlog or workload, but we are constrained to decide cases within the jurisprudential guidelines announced by the Supreme Court. It has been said that intermediate appellate courts are concerned with the results, and it is the function of the Supreme Court to shape the jurisprudence. Canter v. Koehring spoke of “the proper allocation of trial and appellate functions between the respective courts.” It would not benefit the litigants, their attorneys, or the jurisprudence for us to make a painstaking analysis of the testimony of these witnesses in this case to explain a reduction in the quantum of the awards when in all probability the Supreme Court would grant a writ of review, write still another opinion reiterating the principles they have expressed before, and reinstate the judgment of the trial court. Appellants’ argument more properly should be addressed to the Supreme Court and not to this court.
I concur in the result.