HOOD, Judge.
Plaintiff, Garnell Lawrence, claims damages for personal injuries he sustained when he was shot with a pistol by defendant, Clemmie Hartsuck. Charity Hospital of Louisiana at New Orleans intervened, seeking to recover from defendant its charges for medical and hospital services rendered to plaintiff. Judgment was rendered by the trial court in favor of plaintiff and against defendant for $2,500.00, and in favor of intervenor and against defendant for $2,542.35. Plaintiff Lawrence appealed.
The sole issue presented is whether the amount of the award made to plaintiff is inadequate and should be increased.
Defendant Hartsuck shot plaintiff in the head with a .22 caliber pistol on February 27, 1977. The trial judge found that there was no justifiable reason for defendant to commit that act, and that defendant thus is liable to plaintiff for damages and to inter-venor for medical and hospital services rendered to plaintiff. Judgment thus was rendered making the awards above set out. Since defendant Hartsuck has not appealed or answered the appeal, no issue of liability is presented. Plaintiff contends that the award made to him is inadequate and should be increased.
The bullet fired by defendant struck plaintiff in the area of his right forehead. It fragmented upon impact, and a part of it pierced the innermost layer of the brain, in the area of the right frontal lobe. A part of the bullet exited from plaintiff’s skull about three inches behind the point of entry, but the remaining portions of the bullet still remain embedded in plaintiff’s brain. After the shooting a part of plaintiff’s brain exuded from the point where the bullet entered plaintiff’s forehead. He was hospitalized for about three weeks, and during most of that time he was in critical condition. Blood transfusions, electroencephalograms and arterial studies were performed, and several surgical procedures were undertaken, including a wide craniec-tomy over the right forehead, with the removal of some pieces of bone from the skull and the cleaning and debriding of the wound to a depth of about six centimeters into the substance of the brain. The bullet entered through all three membranes of the brain. After being released from the hospital, Lawrence was seen regularly on an out-patient basis up to the time of the trial, and he was hospitalized briefly on two other occasions. At least three bleeding veins of large size in plaintiff’s brain were interrupted by the gun shot wound, and these veins were electrocoagulated thus permanently cutting them off from circulation.
As a result of the above gun shot wound, plaintiff has experienced weakness and numbness of his left leg, headaches and dizziness, at least two epileptic-type sei *455 zures, some personality changes, and he now has substantial and permanent scars or disfigurement of his face. The bullet wound left some scarring in the brain tissues and the seizures which he is experiencing are caused by that scarring. The only medical expert who was called as a witness described the seizures as an abnormal electric discharge across the cortex of the brain, causing abnormal firing of the neurons that control the muscles of the body, and producing the loss of consciousness, with violent jerking of the arms and legs. That physician also testified that his seizures will be a “life-long problem,” that they are known as “traumatic epilepsy,” and they are accompanied by violent convulsions and loss of consciousness.
Plaintiff now has a loss of bone over the right forehead about the size of a silver dollar, which will render him more subject to serious trauma, and he has a remaining cosmetic sear on his forehead. In an effort to conceal the scar, plaintiff has tried to arrange his hair differently, and he wears hats to cover the disfigurement. He testified that he suffers considerable embarrassment.
Lawrence complains now of dizziness and blurring of his vision, numbness and stiffness of his legs, the inability to remember as he did before the accident, and pain in the back of his head about every three months. He was not employed at the time the shooting occurred. After the accident, however, he obtained a job but he was fired in March, 1978. He claims that the reason for his discharge was the fact that he had had an injury to his head and was subject to seizures. Since that time he has been able to obtain employment only as a janitor.
At the conclusion of the trial, and in response to questions asked by the trial judge, defendant testified that she owned the bar which she was operating at the time of the accident, that she has not filed income tax returns since 1976, and that she earns a clear profit from the bar of only about $200.00 per month. Defendant did not plead her inability to pay a judgment, and she did not suggest prior to the time she was questioned by the trial judge that she was impecunious.
The trial judge concluded, as shown in his oral reasons for judgment, that there was no justification for defendant’s use of a gun and that she thus was liable to plaintiff for the damages he sustained. The judge also concluded, however, that “it’s obvious that the defendant could not respond to a judgment of the amount which would be justified by the injuries suffered by the plaintiff,” and that under those circumstances “the court can only render a comparatively small judgment.” He thereupon rendered the judgment from which this appeal has been taken.
We are aware of the limited function of intermediate appellate courts in reviewing awards of general damages made by trial courts. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Reck v. Stevens, 373 So.2d 498 (La.1979). In the instant suit, however', the injuries sustained by plaintiff are substantial, and most of them are of a permanent nature. We think the trial court abused its discretion in awarding plaintiff only $2;500.00 as general damages, despite defendant’s testimony as to her assets and income. In our view, considering all of the circumstances involved here, an award of $50,000.00 would be more in keeping with the damages sustained by plaintiff.
For the reasons assigned, the judgment appealed from is amended by increasing the amount of the award made to plaintiff from $2,500.00 to $50,000.00. In all other respects, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellee.

AMENDED and AFFIRMED.